*New-Haven.*
*July, 1849.*

Eld
*v.*
Gorham.

*ELD against GORHAM.*

The volume termed the " *Revised Statutes of Connecticut,*" published in 1849, is to be deemed to contain all the public statute laws, which were in force in this state, in *January,* 1849.

The copy of the *revised statutes* deposited in the office of the secretary of state, certified under his hand and the seal of the state, has the same force and effect as if it were a portion of the original records of the legislature, and, as such, imports absolute verity.

Therefore, it is not competent to the court, in an ordinary civil suit, *inter partes,* to permit any enquiry into the correctness of the proceedings of the revising committee, or of the secretary of state, in relation to such *revised statutes.* [Two judges doubting.]

On these principles, it was held, in an action by *A* against *B*, on a promissory note, commenced on the 28th of *June,* 1848, and tried in *January,* 1849, that the defendant was a competent witness in his own favour.

THIS was an action on a promissory note, made by the defendant, payable to the order of *W. M. B. Gorham*, and by him indorsed to the plaintiff.

The cause was tried, on the general issue, at *New-Haven, January* term, 1849.

The defence set up by the defendant, was, that the note was altered and made negotiable, after it was signed by the defendant, without his consent or knowledge. To establish this defence, the defendant offered himself as a witness; to which the plaintiff objected. It was admitted, that the General Assembly of this state adjourned *sine die*, on the 28th day of *June*, 1848, at 12 o'clock, *M.;* and that this action was commenced and the writ served on the defendant afterwards, on the same day, at 4 o'clock, *P. M.* The court thereupon sustained the plaintiff's objection, and excluded the defendant as a witness in the cause. The defendant, claiming that this decision was erroneous, moved for a new trial.

*Kimberly*, in support of the motion, contended, That the defendant was a qualified witness, by virtue of the 141st section of the act relating to " civil actions." *Stat.* 86. It is there explicitly declared, that " no person shall be disqualified as a witness, in any suit or proceeding in law or equity, by reason of his interest in the event of the same, as a party or otherwise." This was the law of the state, when the cause was tried, at the term of the superior court, in *January,* 1849 ; the revised statutes having taken effect on the 1st of *January*, 1849. *Stat.* 627. § 1. 5.

This result is inevitable, unless it is avoided, by virtue of the 2nd section of the act of 1848, the first section of which act contains the precise provision just quoted from the revised statutes. The second section of the act of 1848, referred to, provides, that nothing contained in that act shall affect any suit *then pending*. This part of the case, then, turns on the question, whether this suit was pending, at the time referred to in the act of 1848 ; and this involves two enquiries : first, when did that time occur; and secondly, was this suit then pending.

The counsel for the defendant insisted, first, that the expression, " now pending," referred to the time when the act was signed by the governor, which was on the 24th of *June*.

The law was then complete. This was the " *now*" intended, and not a *future* time. But secondly, if this expression referred to the rising of the General Assembly, that event took place before the commencement of this suit. The former was at noon, on the 28th of *June ;* the latter, at 4 o'clock in the afternoon of that day. Thirdly, it was competent for the defendant to shew, by parol evidence or otherwise, the time of day when these events respectively occurred. The maxim that there is no fraction of a day, is a mere fiction of law, which always yields to the matter of fact, where justice between the parties requires it. *Roe* d. *Wrangham* v. *Hersey*, 3 *Wils.* 274. *In re Richardson*, 6 *Law Rep.* 396. *Brainerd* v. *Bushnell*, 11 *Conn. R.* 24. *Williams* v. *Cheesebrough*, 4 *Conn. R.* 356. *Cutler* v. *Wadsworth*, 7 *Conn. R.* 6. *In re Welman*, 7 *Law Rep.* 25. In the service of writs especially, it is the constant and universal practice to enquire in what part of the day—the hour and minute, if necessary—the service was made.

*C. A. Ingersoll*, contra, contended, 1. That the time referred to, in the 2nd section or proviso of the act of 1848, is the time when that act took effect—that is, the rising of the General Assembly, (*Stat.* 413. § 5.) which was on the 28th of *June*.

2. That as this suit was commenced on the same 28th of *June*, it was *pending* at the rising of the General Assembly. This position depends upon the meaning of the words, " from the rising of the General Assembly ;" and this is to be determined by the *record*, and not by oral testimony. What then does the record say ? It says, that the act was passed at the session of the General Assembly in 1848 ; and that the rising of the General Assembly took place on the 28th day of *June* of that year—not at any particular hour of that day. As the record says, that the rising of the General Assembly was on the 28th of *June*, without designating any particular time of the day, and as the act takes effect from the rising of the General Assembly, it takes effect from and after the 28th day of *June*, and not before. The legislature, in using the language *from an act done*, use it as meaning the same as from *the day* of an act done.

*New-Haven,*
July, 1849.

Eld
*v.*
Gorham.

It is not a legitimate subject of enquiry, at what particular part of the day an act of the legislature was completed. From the opening of the session, on a day specified, to its close, is one day—not to be divided. [The counsel here referred to the last day of the last session of Congress, which in fact continued from 10 o'clock, *A. M.* of the 3rd of *March*, to 7 *A. M.* of the 4th of *March ;* and important bills were passed and appointments made, after 12 o'clock of the intervening night ; and yet the record stated all these transactions as of the 3rd of *March*, the validity of which has never been questioned.] The law knows no fraction of a day. When a computation is to be made after an act done, the day of doing the act is to be excluded. *Chitt. Cont.* 730. *Lester* v. *Garland*, 15 *Ves.* 248. *Avery* v. *Stewart*, 2 *Conn. R.* 69. *Bigelow* v. *Wilson*, 1 *Pick.* 485. *Pellew* v. *Wonford*, 9 *B. & Cress.* 134. (17 *E. C. L.* 343.) *Sands* v. *Lyon*, 18 *Conn. R.* 18.

The law of 1848 was not to take effect until *after an act done.* That act to be done was the rising of the General Assembly, which took place on the 28th of *June.* Consequently, the law in question did not take effect until *after* the 28th of *June ;* and as this suit was commenced *on* that day, it was *pending* when such act took effect. Of course, the case was within the proviso, and the defendant had no right to testify.

3. That the question as to the admissibility of the defendant as a witness, was not controuled, by any provision in the book called the " *Revised Statutes*," but was governed exclusively, by the act of 1848, so often referred to. It is claimed by the defendant, that the last-mentioned act was repealed by the act, entitled " An Act to carry into effect the revised statutes ;" (*Stat.* 627. § 2.) that by the 141st and 143rd sections of the revised act for the regulation of civil actions, (*Stat.* 86.) the provisions of the act of 1848 were reënacted, with no other restriction than that they should not affect any suit pending on the 27th of *June*, 1848 ; and that by virtue of the 1st section of the former act, all the provisions in the book became, on the 1st of *January*, 1849, the statute laws of the state. *Stat.* 627. § 1. To this we have a plain and simple answer. It is this—the General Assembly of this state never did, at its session in 1848, or at any other time, make

the enactment contained in the 141st and 143rd sections above referred to; and of this fact the court will judicially take notice. Further, what purports to be a law of the General Assembly of the year 1848, entitled "An Act to carry into effect the revised statutes," never was passed by the General Assembly, and never received the sanction of the legislature; and of this also the court will judicially take notice. This being so, it is of little consequence to enquire how the interpolated provisions became incorporated in the revised statutes, as published. If it is claimed, that the committee made the alteration in the aforesaid act of 1848, and, in the name of the General Assembly, enacted what purports to be a law, found on the 627th page of the printed volume, labelled " REVISED STATUTES OF CONNECTICUT, 1849," then we say, that the committee, either singly or combined, had no right, in the name of the General Assembly, to make statute laws to govern the people of this state, or to affect their legal rights; and this for two reasons. First, the General Assembly never attempted to authorise them to do so; and secondly, if it had, such authority would have been void. [The counsel then proceeded to fortify his position, and to answer objections.]

STORRS, J. The question first presented in this case, is, whether the volume termed " THE REVISED STATUTES OF THE STATE OF CONNECTICUT," published during the present year, under the superintendence of the committee of revision, appointed by the General Assembly for that purpose in 1847, is to be deemed to contain all the public statute laws which were in force in this state, when the present action was tried. If this question is resolved in the affirmative, it is conceded, that the court below erred in excluding the defendant as a witness; since by the 141st section of the act contained in those statutes, entitled " An Act for the regulation of civil actions," it is provided, that " no person shall be disqualified as a witness, in any suit or proceeding at law or in equity, by reason of his interest in the event of the same, as a party or otherwise;" and there is no saving or excepting clause in that act other than that contained in the 143rd section, which applies only to suits pending on the 27th day

of *June*, 1848, which was the day next preceding that on which this suit was commenced.

The validity of this body of Revised Statutes, as thus published, depends on the effect which is to be given to that part of the act, " relating to the Revised Statutes," passed in 1848, which provides for the mode of authenticating the statutes revised and compiled by said committee. *Sess. Laws of* 1848, *ch.* 80. *p.* 70.

The committee appointed in 1847, to revise the public statute laws of the state then in force, having completed said revision, reported the same to the legislature at its session in 1848, which, after having been referred to the joint select committee on the subject of that revision, was then approved by the act last above-mentioned ; and it was further enacted, by the 2nd section of that act, that the said revised acts so approved, and the acts passed at the then present session, when incorporated with the said revised acts, should constitute " The Revised Statutes of the State of *Connecticut ;*" and the same were " thereby enacted and confirmed as such ;" and by the 3rd section, all public statute laws, other than the said acts revised and approved, and the acts passed at said session of 1848, and other than acts of incorporation, confirming statutes and acts, which, although public acts in form, are of a merely private nature, were repealed. In the 5th section, it is provided, that said acts and the said revised statutes shall go into effect on the 1st day of *January*, 1849, and not before.

The act in the revised statutes, which has been mentioned, removing the common law disability of parties as witnesses, was first enacted in 1848 ; and, as it was originally passed, contained no special limitation as to the time when it should go into operation ; and therefore, by the general law on that subject, took effect from and after the rising of the General Assembly of 1848, by which it was passed ; which, it is conceded, took place on the 28th day of *June* of that year, the day on which the present suit was commenced. *Sess. Laws of* 1848, *ch.* 44. *p.* 38. That act did not constitute a part of the statute laws which were to be revised by the revising committee, since the acts to be revised by them consisted only of the statutes which were in force previous to the session of the legislature of that year ; but by the act,

*New-Haven,*
*July, 1849.*

Eld
*v.*
Gorham.

" relating to the revised statutes," passed in 1848, that act, together with the other statutes enacted that year, were to be incorporated with said revised acts, and they were together to constitute the said revised statutes of the state.   We find, however, in the volume of revised statutes as published, that in connexion with the provision in the 141st section of the act for the regulation of civil actions, (that parties in suits shall be admissible as witnesses,) there is a further provision in the 143rd section of the same act, that the said provision in the 141st section shall not affect any suit pending on the 27th day of *June,* 1848, without any other limitation.

The difference, therefore, between the provision respecting the competency of  parties as witnesses, as it was originally passed, and as it now  stands in the revised  code, is, that by the former, it took effect on the 28th day of  *June,* 1848, the day of the  commencement of this  suit, and therefore raises the question, whether it applied to a suit commenced on that day ; whereas by the  latter, it clearly applies to this suit, which was brought after the 27th day of *June,* 1848, and therefore rendered the defendant a competent witness.   The question is, whether the act, as it was originally passed, or as it is now found in the revised code, is to be considered the law on this subject when this action was tried in the superior court.   The defendant claims, that the certificate of the secretary, annexed to the revised statutes, furnishes evidence which must be deemed conclusive of the existence and validity of the laws as they are contained in those statutes.   The plaintiff insists, that that certificate is not thus conclusive, but that we may look behind it, into the proceedings of the committee of revision ; that by doing so, it appears, that they exceeded the powers conferred on them, in inserting a provision in the published revised statutes, limiting the provision therein, respecting the competency of  parties as witnesses, to suits pending on the 27th day of *June,* 1848 ; and that the question as to the effect of that provision in the revised statutes, is to be determined, as if it was therein declared, that it should take effect on the rising of the legislature of 1848, when it took effect, by the act containing it, as originally passed.   And on the supposition that the claim of the plaintiff in this particular is valid, he further claims, that, on the facts conceded in this case, the principles of law in regard to

the construction of statutes, warranted the court below in
excluding the defendant as a witness.

We think that the effect of the act relating to the revised
statutes, passed in 1848, was, to continue in force until the
1st day of *January,* 1849, all of the public statute laws
which were in force at the time of the passage of that act,
and not repealed at the session at which it was passed, and
also the acts passed at that session; and from the 1st day of
*January,* 1849, inclusive, to constitute the acts therein men-
tioned, which had been revised by the revising committee, to-
gether with the acts passed at the session of 1848, when the
latter should be incorporated with said revised acts, the
public statute laws, and (with the exceptions and qualifica-
tions contained in the 3rd section, which have no application
to the question now before us,) the only public statute laws
of this state, by the name of "The Revised Statute Laws of
the State of *Connecticut,*" and to enact and confirm them as
such.

But the legislature further deemed it expedient to prescribe
a simple, convenient and certain mode for ascertaining what
particular statutes constituted the revised code. The several
acts revised by the committee, and which, together with
those passed in 1848, were to compose this code, were, by
the said act relating to the revised statutes, approved, en-
acted and established, as the Revised Statutes, only by
a reference to them as "the several acts revised by the
committee appointed by the General Assembly, at its last
session, to revise the statute laws of the state, referred to
the joint select committee on the revision of the statutes,
and by them reported to this Assembly." Although it would
indeed be practicable, by an examination of the journals and
files of the two branches of the legislature, to ascertain
which those revised acts are, it would, in most cases, be ex-
ceedingly inconvenient, and in some, very difficult, to do so,
from a want of access to these sources of information. The
legislature, therefore, made provision for the publication of
the said revised code, and by the 4th section of said act, pro-
vided, that one copy thereof should be deposited and forever
kept in the office of the secretary of state; that the secre-
tary of state should annex a certificate thereto, under his
hand and the seal of the state, that the laws therein con-

tained are *the statute laws of the state;* and that such certified copy should be *an authentic record* of *said laws.* A copy of the published volume containing those laws has been deposited in the office of the secretary of state, who has annexed thereto a certificate, such as is thus required.

That it is competent for the legislature to prescribe what shall constitute a record of their proceedings, the manner in which it shall be made, and the effect thereof, admits of no question. And it is equally clear, that when they have prescribed what shall constitute a record, although they have not expressly declared what shall be its effect, it has, and is to be treated, to all intents and purposes, as having the effect which is attached to all records, as to its constituting evidence of what is stated in it. When, therefore, the legislature constituted such certified copy an authentic record of the statute laws of the state, it has the same force and effect as if it were in truth a portion of the original records of the proceedings of that body. As such, it imports absolute verity ; is, in itself, conclusive evidence of what it states ; and is therefore entitled to implicit credit. Hence it follows, that its existence as a record being conceded, it can neither be contradicted nor varied as to any of the facts of which it professes to be the memorial ; and that no evidence is admissible, because it would be unavailing, for that purpose. And it being a record of the statutes of the state, courts are bound judicially to take notice of these statutes ; not because it is the prerogative of courts arbitrarily to determine what are the public statutes of the state, nor because they are required or supposed to have a knowledge of those laws without any evidence of them, but because they have the means and it is their duty to make themselves acquainted with the records of the legislature, which are in their nature not only conclusive evidence, but the only original evidence of those laws.

From these principles, it results, that we are bound to consider the copy of the published statutes, thus certified by the secretary, as containing the veritable and only statute laws of the state, when the present action was tried ; and that therefore, it is not competent for us, in this suit and in this mode, to permit any enquiry as to the propriety of the course taken by the committee of revision, or the secretary of state,

respecting the publication or authentication of those statutes. Whether there is any other mode, by which any errors, which they may have committed in the discharge of these duties, can be corrected, by the judicial tribunals of the state, is a question which it is not necessary now to determine. It is sufficient to say, that until the records of the state, as they now stand, are legally and regularly obliterated or corrected, they must receive implicit faith and credit. If there be any legal remedy in those tribunals, it is not by collaterally impeaching their validity, in the mode here attempted, but would probably be, by some direct and specific proceeding, more appropriate to that purpose. As to the existence or nature of any such remedy, however, we would intimate no opinion.

*New-Haven,*
July, 1849.

Eld
*v.*
Gorham

The argument in favour of examining the doings of the revisers, for the purpose of deciding on the validity of their proceedings, in embodying the statutes revised by them and approved by the legislature, with the acts of 1848, drawn from the consequences to the public and to individuals, which may result from errors committed by them, if they cannot be corrected in the mode here attempted by the plaintiff, is certainly very imposing in its character; but it is, when scrutinized, only the same which would apply in all other cases, where it is claimed collaterally, that facts are erroneously stated in a record. The law presumes conclusively, that it speaks the truth; and public policy forbids, that it should be open to contradiction, unless in a proceeding properly instituted for the specific purpose of correcting it.

The conclusion to which we have come as to the effect of the authentication of the published revised statutes, renders it unnecessary to determine the other questions which have been argued in the case. The result is, that as, by the revised statutes, there is no limitation as to the provision of the statute which has been mentioned making parties to suits competent witnesses, excepting as to suits pending on the 27th day of *June*, 1848, which was the day previous to the commencement of this suit, the defendant should have been permitted to testify; and therefore a new trial is advised.

In this opinion, CHURCH, Ch. J., and ELLSWORTH, J., fully concurred.

WAITE and HINMAN, Js., were also of opinion that a new trial should be granted, but did not fully concur with the other judges as to the effect produced by the revised statutes upon the law passed by the legislature in 1848. They inclined to the opinion that the revising committee had no power to alter or change that law ; and that notwithstanding the revised statutes, they were not authorized to say, that the statute of 1848 did not still remain in force.

New trial to be granted.