THE STATE EX REL. MATTHEW CORBETT *vs.* THE TOWN OF SOUTH NORWALK ET AL.

THE STATE EX REL. TOWN OF NORWALK *vs.* THE TOWN OF SOUTH NORWALK.

Third Judicial District, New Haven, June Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The " three days," Sundays excepted, within which the Constitution of this State (Art. IV, § 12) requires a bill to be returned by the Governor in order to prevent its becoming a law without his signature, is not necessarily confined to the three secular days next after its presentation to him, but includes three days during each of which there is an opportunity to return the bill to the house in which it originated, while such house is in actual session.
A long course of practice on the part of the Governor, acquiesced in by the legislature, under a constitutional provision relating to his approval or disapproval of bills, while not absolutely binding on the judicial department, is entitled to great regard in determining the true construction of such a provision, if its phraseology is in any respect of doubtful meaning.
The courts take judicial notice of the contents of the volume in which the Secretary of the State (under General Statutes, § 106) binds up

VOL. LXXVII—17

those engrossed bills of each session of the General Assembly which have become laws. But that a certain engrossed bill has not been so bound up does not, under all circumstances, conclusively establish that it has not become a law.

Argued June 23d—decided August 12th, 1904.

ACTIONS in the nature of *quo warranto* to determine the legality of the incorporation of South Norwalk as a town, brought to the Superior Court in Fairfield County and reserved by that court, *Roraback, J.*, upon a finding of facts made by a committee, for the consideration and advice of this court. *Judgment of ouster in favor of the State advised in each action.*

These two cases were argued together. The case of State ex rel. Corbett v. South Norwalk et al., hereinafter called No. 1, was brought on the relation of a citizen of the city of South Norwalk; the defendants were "the claimed town of South Norwalk" and sundry inhabitants of territory now or formerly part of the town of Norwalk, and within the claimed bounds of said claimed town, and who claimed to hold offices in said claimed town and who, together with the other inhabitants of said territory (who, it was alleged, were too numerous to be made parties defendant), were claiming to constitute and be such claimed town.

The case of State ex rel. Norwalk v. South Norwalk, hereinafter called No. 2, was brought on the relation of the town of Norwalk, against the "pretended town of South Norwalk," and alleged that it and the inhabitants of a certain part of the town of Norwalk claimed to be a town by the name of South Norwalk and to have all the privileges of a town lawfully incorporated.

The information in No. 1 stated this case : On April 1st, 1903, a joint resolution—a copy of which was annexed— incorporating the town of South Norwalk, originating in the house of representatives and which had been passed by both houses of the General Assembly, was presented, duly engrossed and signed, to the Governor. On Thursday, April 2d, the house of representatives adjourned to Tuesday, April 7th, and was in session on April 7th and 8th. On April 8th the

Governor returned the resolution, without his signature and with his objections thereto, to the house of representatives. On April 9th the house reconsidered it, and subsequently, it having been again put to vote, it was lost. Nevertheless, the inhabitants of the territory embraced in the resolution proceeded, on October 1st, 1903, to call a meeting of the pretended town of South Norwalk, at which town officers were elected for the ensuing year, which pretended offices the individuals made defendants are exercising and usurping under color of such election.

To this information the defendants demurred, and the questions arising on the demurrer were reserved for the advice of this court, a stipulation being afterwards filed to the effect that the cause should be disposed of in connection and conformity with the disposition made of No. 2 and in view of the facts found in that action.

The information in No. 2 stated no color for the usurpation charged, but by plea, replication and rejoinder, the facts stated in the preceding information were, with others, brought upon the record. This case was referred to a committee, and, their report having been accepted and found true, reserved for the advice of this court.

*Levi Warner* and *Lewis Sperry,* with whom was *Elmore S. Banks,* for the relator (Norwalk).

*Henry Stoddard* and *Edward D. Robbins,* with whom was *John H. Light,* for the respondent (South Norwalk).

BALDWIN, J. These causes hinge upon the true meaning of Art. IV, § 12 of the Constitution of this State, which reads as follows : " Every bill which shall have passed both houses of the General Assembly, shall be presented to the Governour. If he approves, he shall sign and transmit it to the Secretary, but if not, he shall return it to the house in which it originated, with his objections, which shall be entered on the journals of the house ; who shall proceed to reconsider the bill. If after such reconsideration, that

house shall again pass it, it shall be sent, with the objections, to the other house, which shall also reconsider it. If approved, it shall become a law. But in such cases the votes of both houses shall be determined by yeas and nays; and the names of the members voting for and against the bill, shall be entered on the journals of each house respectively. If the bill shall not be returned by the Governour within three days, Sundays excepted, after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it; unless the General Assembly, by their adjournment, prevents its return, in which case it shall not be a law."

Was the bill for the joint resolution incorporating the town of South Norwalk returned by the Governor to the House of Representatives within three days, Sundays excepted, after it was presented to him? If not, it became a law, and there was good warrant for the incorporation of the town of South Norwalk.

The commencement of this period of not exceeding three days, given by the Constitution to the Governor for the consideration of every bill which has been duly passed by both houses, is certain. It begins when the bill is presented to him. It cannot be deemed to have been presented to him until it has been in some way put into his custody, or into that of some one properly representing him, in such a manner that he has a reasonable opportunity to inspect and consider it. *Opinion of the Justices*, 99 Mass. 636. Due provision was made, shortly after the adoption of the Constitution, for such attendance on "the Governor, or the person administering the office of Governor," as might serve to secure his proper representation at the executive offices during the sessions of the General Assembly. Public Acts of 1819, p. 358, Chap. 19; Revision of 1821, p. 258, § 2; General Statutes, § 68.

In like manner, a bill which he does not approve cannot be deemed to have been returned by the Governor until he, or some one properly acting in his behalf, has put it out of his custody into that of the house in which it originated, or

of some one properly acting in its behalf, in such a manner that there is a reasonable opportunity given for that house to become apprised of his objections and proceed to a reconsideration.

We take judicial notice of the fact that during the entire history of the Colony and State of Connecticut it has been the custom of the Governor to be at the seat of government during the sessions of the General Assembly ; and the report of the committee in No. 2 shows that since the creation of the office of executive secretary in 1819 the invariable practice, in returning a bill, has been to return it by his hand for delivery in open house to the proper officer.

The orderly conduct of public business requires that, in some open and visible manner, the custody of a bill, the reconsideration of which is desired by the Governor, should pass from him to the house where it originated. It is of the first importance that the people should know to what law they are subject. In the case of every unsigned bill, it must be the intent of the Constitution that they should have some certain means of knowledge as to whether it has been returned for reconsideration or not, within the time limited for that purpose ; for if not so returned, it is a law. Such means of knowledge, when a bill is returned, can only exist if this is so done that both the fact and the date of the return are readily ascertainable. The adjournment of the house in which it originated, for more than three calendar days (Sundays excepted) after its presentation to the Governor, prevents that officer from making a return within that period in the usual manner. It prevents him from making a return within that period in any way that puts the bill directly in the keeping of that particular house. It would not comport with the dignity of his office to require him to follow the speaker or the clerk, or the Lieutenant-Governor, as president of the Senate, and place it in his hands. Nor could it properly be left with the Secretary of the State. The Constitution, indeed, provides (Art. IV, § 18) that that officer " shall have the safe keeping and custody of the public records

and documents, and particularly of the Acts, Resolutions and Orders of the General Assembly, and record the same." But each house has its own clerks who are the proper custodians of its files and papers during the sessions of the General Assembly. A return to the Secretary of the State would not be a return to a particular House of Assembly.

It follows that the term "three days" as used in the Constitution, when read with due reference to the context, cannot have been employed to denote in all cases three calendar days. It denotes a period which cannot end except upon a day when the house to which this provision refers is or has been in session. We have no occasion now to inquire whether, in case of a session upon that day so brief as to give the Governor no reasonable opportunity to return a bill before its close, the Constitution could be so construed as to permit a return to be postponed until such an opportunity had been afforded.

Since the word "days," if taken in its strict and primary meaning would make the Constitution inconsistent with itself, it is necessary to inquire whether, as applied to the subject in question, any other and secondary meaning can be assigned to it, by resort to which the inconsistency would be avoided.

During our colonial history and until the adoption of our Constitution in 1818, the Governor was an integral part of the General Assembly. He presided over it, until it was divided into two branches, and afterwards over the upper house, and by the charter his attendance or that of the Deputy-Governor was necessary to constitute a quorum. Stat., Ed. 1808, p. 201, § 3. The Constitution substituted for this mode of participating in legislative power another, by requiring his written approval of every enactment, except under the conditions specified in the section which is now under consideration.

The report of the committee shows that during the first ten years under the Constitution, both houses, from the opening to the close of the sessions of the General Assembly, sat every day in the week except Sundays, and that the

same was true during the next twenty-one years, except that about the middle of May each house adjourned from Thursday or Friday of one week to Tuesday of the next week, and in one case from Friday to Monday of the next week. In 1852 both houses adjourned from Thursday, May 13th, to Tuesday, May 18th, and similar adjournments of five days were made in 1853 and 1854. Since 1856 it has not been usual for either house to sit on Saturdays or Mondays.

The early history of the Commonwealth and the practice for ten years following the adoption of the Constitution make it probable that the people for whom it spoke expected the adjournments of the General Assembly to be made from one day to the next throughout each session, without a break except for Sundays. Each day would be both a calendar day and a day of legislative session. After ten years, it became the practice to make one longer adjournment in each session, after sufficient time had elapsed to allow the business to take definite shape, and thus not infrequently create an interval of five days, during which an opportunity could be afforded for committee work. If "three days" means three calendar days, the Governor was often deprived by this new practice of his constitutional right to keep under consideration within that period any bills that might be presented to him on the day of adjournment. If, on the other hand, "three days" means three days during each of which it is possible to return a bill to the house in which it originated, there was no infringement of his prerogatives.

In the great case which declared charters of private corporations to be contracts, the obligation of which no State could pass any law to impair, Chief Justice Marshall met the argument that in using the word "contract" the framers of the Constitution had no such result in mind, by remarking that "it is not enough to say, that this particular case was not in the mind of the convention, when the article was framed, nor of the American people, when it was adopted. It is necessary to go farther, and to say that, had this particular case been suggested, the language would have been so varied as to exclude it, or it would have been

made a special exception." *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 644. There is no reason to suppose that, had it been suggested in the constitutional convention of 1818 that public convenience might be found to require adjournments for five days during a session of the General Assembly, and that in such case the term three days might be construed to mean days when the house was sitting to which the return of a bill, which failed to receive the Governor's approval, was to be made, there would have been any alteration of phrase, to exclude that construction.

Prior to 1882 no record can be found of the time when any bill was presented to the Governor. Between 1882 and the time when the occasion of the present controversy arose, twenty-six bills passed by both houses were returned by the Governor without his signature, and six of them were not returned within three calendar days, Sundays excepted, after their presentation to him ; but were returned on or before the third day of actual session of the house in which they originated, excluding Sundays and the day of presentation. The first instance of this occurred in 1883. In no case has the house objected to the time of the return.

The course pursued by the Governor in the present instance was therefore in conformity with precedents running back for at least twenty years. A practice of such duration on the part of the executive department, acquiesced in by the legislative department, while not absolutely binding on the judicial department, is entitled to great regard in determining the true construction of a constitutional provision the phraseology of which is in any respect of doubtful meaning.

General Statutes, § 106, provides that after the rising of each General Assembly, the Secretary of the State shall cause all the engrossed bills which shall have become laws to be bound in one volume, which shall be the official records of the Acts passed by that Assembly. We take judicial notice that the joint resolution now in question is not contained in the volume so bound up, of the laws passed in 1903. This, however, is not conclusive upon the parties to

this proceeding. The statute simply creates a source of evidence. The evidence which is thus furnished is in ordinary cases conclusive. *Eld* v. *Gorham*, 20 Conn. 8, 16. But in a controversy to which the State is a party, and in which the issue is whether, by force of an express provision of the Constitution, on the admitted facts, a certain bill passed by the General Assembly became a law, though it is not to be found in the bound volume in the Secretary's office, the rule of decision must be the Constitution, rather than the statute under which that volume is made a public record. Had the bill in question become a law by force of the Constitution, and then been inadvertently or improperly omitted from the volume, the State, by a writ of mandamus, could have compelled the Secretary to alter his record so as to include it. The State can also, by *quo warranto* proceedings, put the ultimate facts before its courts and ask them to decide the fundamental question, whether the Constitution, by its self-executing declaration, made the bill a law. In our opinion it did not. The term "three days," in view of all the provisions of the section under consideration, and of the construction repeatedly given to them by successive Governors with the acquiescence of the General Assembly, means three days during each of which there is an opportunity to return a bill to the house in which it originated, while in actual session.

To the information (entitled as No. 1) filed on the relation of a private individual, certain of the inhabitants of the territory included within the limits of the new town which the resolution in question was intended to create, and sufficient in number to represent all, are made parties defendant together with the "claimed town of South Norwalk" itself. The information (entitled as No. 2) on the relation of the town of Norwalk alleges that all the inhabitants of the territory in question pretend that they have been incorporated as the town of South Norwalk and are entitled to enjoy the franchise of a town, but the rule to show cause was issued against the "pretended town of South Norwalk" alone. No exception has been taken in either case to the attempt thus

to bring the pretended town into court as a party charged with usurping a corporate franchise, and, under the stipulation by which the causes have been virtually consolidated, they may properly be disposed of on their merits, regarding the term "pretended town" as a distinguishing name descriptive of the individual inhabitants of certain territory who claim to be a quasi-corporation. *Barkhamsted* v. *Parsons*, 3 Conn. 1, 7 ; General Statutes, § 588.

The Superior Court is advised to render judgment of ouster in favor of the State in each action.

· The costs in this court will be taxed in favor of the State in each case.

In this opinion the other judges concurred.