JOHNSON CITY *v.* TENNESSEE EASTERN ELECTRIC COM-
PANY.

(*Knoxville.* September Term, 1915.)

1. PLEADING . Demurrer.

Defenses not appearing on the face of complainant's bill cannot
be taken advantage of by defendant in its demurrer. (*Post,*
*pp.* 634-637.)

2. STATUTES. Enactment. Veto by executive. Effect of "Ad-
journment."

Constitution article 3, section 18, provides in part that if the gover-
nor shall fail to return any bill with his objections within five
days (Sundays excepted) after presentment to him, it shall be-
come a law without his signature, unless the general assembly,
by adjournment, prevents its return, in which case it shall not
become a law. *Held,* that "adjournment," as used, means final
adjournment of both houses, though as the word is generally
used it may be intended to signify either a temporary or a final
adjournment, so that a bill which was held by the Governor for
thirty-three days before its return vetoed, for thirty days of
which both houses of the general assembly were adjourned
temporarily pursuant to joint resolution, became a law, as it
might have been returned during adjournment within five days
with veto to an agent of the house of representatives, in which
the bill originated, such as the clerk. (*Post, pp.* 637-651.)

Cases cited and approved: McNeil v. Commonwealth, 12 Bush.
(Ky.), 727; Miller v. Hurford, 11 Neb., 377; State v. Michel, 52
La. Ann., 936; Harpending v. Haight, 39 Cal., 189; Corwin v.
Comptroller, 6 S. C. 390; Hequembourg v. City of Dundirk, 49
Hun., 550; People v. Hatch, 33 Ill., 135; State v. South Nor-
walk, 77 Conn., 257.

Code cited and construed: Secs. 227, 230 (S.).

Johnson City v. Eastern Electric Co.

Constitution cited and construed: Sec. 18, art. 3 (1870). Sec. 21, art. 4 (1848).

3. **STATUTES.** Enactment. Veto by executive. Return of bill.

A return of a bill by the governor, with his objections thereto in writing, made to the committee on enrolled bills of the house of origin or to any member thereof, is a good return of the bill and objections within constitution article 3, section 18, providing that the governor's failure to return the bill with objections within five days, Sundays excepted, after presentment to him, causes it to become a law without his signature, unless adjournment of the general assembly prevents such return. (*Post, pp.* 637-651.)

4. **STATUTES.** Enactment. Return by Governor. Statute. "Adjournment."

Shannon's Code, sections 227-230, touching the procedure in regard to bills after enrollment, does not amount to a construction of a Constitution article 3, section 18, providing that failure of the governor to return a bill within five days after presentment to him, shall cause it to become a law without his signature, unless return is prevented by adjournment, in conflict with the construction in the section of "adjournment" as meaning "final adjournment." (*Post, pp.* 651-654.)

Acts cited and construed: Acts 1871, ch. 139.

Code cited and construed: Secs. 227-230 (S.).

Constitution cited and construed: Sec. 18, art. 3; Sec. 11, art. 2.

---

FROM WASHINGTON

---

Appeal from the Chancery Court of Washington County.—HAL. H. HAYNES, Chancellor.

THAD A. Cox, for appellant.

GEO. C. SELLS, for appellee.

FRANK M. THOMPSON, Attorney-General, for the State.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The original bill was filed herein by the city of Johnson City, claiming certain rights under House Bill No. 19 of the general assembly of 1915, and predicating said rights upon the enactment of said bill into law, according to the requirements of the constitution. The Tennessee Eastern Electric Company demurred, the chancellor overruled the demurrer and decreed that House Bill No. 19 was a law, and that complainant was entitled to the writ of *mandamus* sought by its supplemental bill. The Electric Company appealed and has assigned errors in this court.

We need not discuss the second and third assignments of error. They are predicated on the existence of certain defenses which do not appear on the face of complainant's bill, and which defendant cannot have advantage of by demurrer. The only matter available to defendant under its demurrer was its assault on the validity of House Bill No. 19. A copy of that bill is as follows:

"House Bill No. 19.

"(Mr. Barnes), An act to authorize the president and secretary of the State board of education to certify expenses for lighting the State Normal at Johnson City, and to provide for the payment of such expenses. ·

"Section 1. Be it enacted by the general assembly of the State of Tennessee that the president and secretary of the State board of education be and they hereby are authorized and directed to certify to the comptroller of the treasury the necessary expenses for lighting the State Normal School at Johnson City from the final passage of this act, provided that payment for current shall not exceed five cents per kilowatt hour.

"Sec. 2. Be it further enacted, that the comptroller of the treasury shall disburse the moneys for the expenses so certified in the manner prescribed by law for the disbursement of money to charitable institutions. .

"Sec. 3. Be it further enacted that this act take effect from and after its passage, the public welfare requiring it.

"Passed March 30th, 1915.

"WILLIAM P. COOPER,

"Speaker of the House of Representatives.

"ALBERT E. HILL,

"Speaker of the Senate."

Appearing under above is the notation:

"This bill vetoed by the governor, and veto sustained by the house of representatives."

The following is a copy of a message from the governor addressed to the speaker of the house of representatives setting out the objections of the governor to House Bill No. 19:

"To the speaker of the house of representatives. I am returning House Bill No. 19 without my approval, for the reason that the contract made and entered into by and between Johnson City and the State Board of education expressly provided that free lights and water would be furnished the school in the event the same was located at that place. Therefore the furnishing of lights free to this school was a part of the consideration agreed to be paid by Johnson City, for the location of the same.

"Tom C. Rye, Governor.

"May 4, 1915."

House Bill No. 19 originated in the house and passed the house and senate in all respects as required by the provisions of section 18 of article 2. It was then signed by the respective speakers in open session, and the fact of such signing noted on the journal. The date of its passage in the house was March 30, 1915. It was then presented to the governor, and this occurred on April 1, 1915. The bill remained in the hands of the governor continuously from the last above date to May 4, 1915, on which day his excellency returned the bill to the house in which it originated with his objections

to it in writing set out supra.    The house failed again
to pass the bill, notwithstanding the objections of the
executive.

On April 3, 1915, both houses of the general assem-
bly, by joint·resolution adjourned, not *sine die,* but to
meet again on May 3, 1915, on which latter date that
body again assembled pursuant to adjournment.

From the foregoing it is apparent that excluding the
day the governor received the bill and including the
day it was returned with his objections to the house
in which it originated, this bill was continuously in
his hands for the space of thirty-three days.    Under
the facts which are not in dispute the controversy be-
tween the parties is narrowed to a single question.
What is meant by "adjournment" in section 18, art.
3, of our constitution?

At this point two rival contentions arise.    First, ap-
pellant insists that, under section 18, article 3, of our
constitution of 1870, the return of a bill with his ob-
jections thereto in writing, which is required to be made
by the governor, if he refuse to sign it, must be made
to the house in which the bill originated, at a time
when there is present in that house a quorum of its
members competent to a reconsideration of the bill or
other transaction of legislative business.    Second, ap-
pellee insists that such return may be made to some
officer, agent, or employee of the house chargeable,
within the meaning of the constitution, with the duty
of placing before the house for its reconsideration, the
·returned bill, and the objections of the governor there-

to, whether a quorum of the membership of the house be present or not at the time the bill with the objections of the governor be placed in the hands of the officer, agent, or employee of the house.

Section 18 of article 3 is as follows:

"Every bill which may pass both houses of the general assembly, shall before it becomes a law, be presented to the governor for his signature. If he approve, he shall sign it, and the same shall become a law; but if he refuse to sign it, he shall return it with his objections thereto, in writing, to the house in which it originated; and said house shall cause said objections to be entered at large upon its journal, and proceed to reconsider the bill. If after such reconsideration a majority of all the members elected to that house shall agree to pass the bill notwithstanding the objections of the executive, it shall be sent with said objections, to the other house, by which it shall be likewise reconsidered. If approved by a majority of the whole number elected to that house, it shall become a law. The votes of both houses shall be determined by yeas and nays, and the names of all the members voting for or against the bill shall be entered upon the journals of their respective houses. If the governor shall fail to return any bill, with his objections within five days (Sundays excepted) after it shall have been presented to him, the same shall become a law without his signature, unless the general assembly, by its adjournment, prevents its return, in which case it shall not become a law. Every joint resolution or

order (except on questions of adjournment), shall likewise be presented to the governor for his signature, and before it shall take effect shall receive his signature; and on being disapproved by him shall, in like manner, be returned with his objections; and the same, before it shall take effect, shall be repassed by a majority of all the members elected to both houses, in the manner and according to the rules prescribed in case of a bill.''

It is manifest from a reading of the foregoing section that if the insistence of the appellant be the true postulate from which we should proceed, that is to say, if the return must be made to the house when a quorum of its membership is present, then the meaning of the phrase in the above section, ''unless the general assembly by its adjournment prevents its return'' is that any adjournment which would result in the absense of a quorum would be such an adjournment as would prevent the return of the bill, and therefore it would result that the governor could not return a bill during adjournment if the house in which it originated had adjourned for midday luncheon, or had adjourned at night until the following morning, or had adjourned for any longer period of time, or had finally adjourned.

If we should adopt the above conclusion it would necessarily result in a holding that the time during which the house in which the bill originated was temporarily adjourned could not be counted against the time limiting the governor's right or power to return

the bill with his objections to five days from the time it was presented to him, and therefore in order that the governor might at all times be advised of the amount of time within which the power was still in him to so act in respect of any particular bill, it would be necessary that he be informed of the length of each adjournment, and that he add the space of each to the five days' time referred to above. We think such a construction would result in many evils and abuses, and that it is not the one intended by the framers of section 18 of article 3.

The sound insistence is the one made by appellee. "Adjournment," as used in the phrase above quoted from the constitution, means final adjournment. The framers of the constitution must have known that each house of the general assembly which would meet after the adoption of the Constitution of 1870 would have a committee on enrolled bills. Such a committee is necessary to the orderly administration of legislative business. Such a committee existed in each house of the general assembly of Tennessee prior to the adoption of the Constitution of 1870, and has existed since the adoption of that constitution. Soon after the adoption of the Constitution of 1870, in fact at the session of the general assembly of the year 1871, legislation was passed, which now appears as sections 227 to 230, inclusive, of Shannon's Code. These sections are as follows:

"Section 227. Every bill, joint resolution, or order, except on questions of adjournment, shall, after the

same has been passed, enrolled and signed by the speakers of both houses of the general assembly, be presented by the committee on enrolled bills of that house wherein such bill, joint resolution, or order, originated, to the governor for his signature; and said committee shall report that they have presented the bill, joint resolution, or order to the governor for his signature, and the date of such presentation, which report shall be entered on the journal of that house to which such committee belongs: Provided, that no bill, joint resolution, or order shall be presented to the governor as aforesaid until the time for moving a reconsideration shall have expired, unless expressly or--dered by that house wherein such bill, joint resolution, or order originated: And provided further, that the speaker of the senate shall first sign all bills and joint resolutions originating in the senate, and the speaker of the house of representatives shall first sign all bills and joint resolutions originating in the house of representatives.

"Sec. 228. If the governor shall fail to return any bill, joint resolution, or order, with his objections, within five days (Sundays excepted) after it shall have been presented to him, it shall be the duty of the committee on enrolled bills of that house wherein such bill, joint resolution, or order originated to cause said bill, joint resolution, or order forthwith to be reenrolled; and the same shall thereupon be signed by the re-

spective speakers of each house, who shall annex and sign the following certificate:

" 'This bill (joint resolution or order) having been presented to the governor for his signature on the —— day of ——, and the governor having failed to return it within the time prescribed by law, the same is hereby declared to have become a law (or, in case of a joint resolution or order, the same is hereby declared to have taken effect). This —— day of ——, 18—.

" '————,
" 'Speaker of the House of Representatives.
" '————,
" 'Speaker of the Senate.'

"Sec. 229. If the governor approve the bill, joint resolution or order, he shall write upon the same, to the left of and below the signature of the speaker of the two houses, the fact and date of his approval, as follows: 'Approved ——, 18—,' and shall sign the same as follows: '——, governor.'

"Sec. 230. When any bill, joint resolution, or order shall have been returned duly signed by the governor, or shall have been passed over his veto, or shall otherwise become a law, the committee on enrolled bills of that house wherein such bill, joint resolution, or order originated, shall forthwith file the same in the office of the secretary of State, and shall report the fact and date of such filing, which report shall be entered upon the journal."

Beyond question a return made by the governor of a bill with his objections thereto in writing to the committee on enrolled bills of the house of origin, or to any member thereof, would be a good return of the bill and objections within the meaning of the constitution. The committee, or any member of it *virtute officii,* would be under the duty of placing before the house where the bill originated, when a quorum was present therein, the bill with the objections of the governor thereto, to the end that the bill might be reconsidered by that house, and if passed by it, and passed by the other house, notwithstanding the objections of the executive, it might be dealt with by the committee as provided by section 230 of Shannon's Code. Furthermore, we think such a return might properly be made within the meaning of the constitution to the clerk of the house in which the bill originated. He would be chargeable by reason of his office or employment with the duty of informing the house, when a quorum was present, of the fact that the governor had returned the bill with his objections thereto. The house in which a bill originates is a component part of the general assembly. The general assembly is one of the three distinct departments of government, under our constitution. See article 2, section 1.

The house in which a bill originates is a parliamentary body, and must, so far as the manual possession of its journals, bills and enrolled bills, resolutions and the like, is concerned be represented by agents. It has custody of such things through its agents, and al-

though a house in which a bill originated might be in open session with a quorum present, it could only gain knowledge of the fact that the bill was returned by the governor, with his objections, through the manual act of some agent for the house, or member acting in that capacity. In other words, if a bill should be returned by the governor, with his objections, to the house in which it originated, while the house was in open session, with a quorum present, and ready to reconsider the bill, the messenger from the governor, or the governor himself, if he should return the bill in person, would doubtless deliver manual possession of the bill to the clerk of the house, to the speaker of the house, or to some member of the committee on enrolled bills, and by means of the individual agency so selected, the house would gain intelligence of the fact that the bill had been returned, and of the substance and meaning of the objections of the governor returned with the bill. These considerations demonstrate that it could not have been the intent of the framers of section .18 of article 3 that the return of the bill, with the objections of the governor could only be made while the house in which the bill originated was in open meeting with a quorum present. Nothing could be accomplished by a return of this character which would not be equally well accomplished in any one of the other modes above indicated. The intent of the framers of constitution was that the governor should have five days' time within which to consider the bill and to determine whether he would approve

and sign the bill, or refuse to sign it, and return it with his objections to the house in which it originated. If the framers of the constitution had intended that the governor should have a longer time within which to perform those duties, that intent would no doubt have been made to appear in plain terms.

Only one contingency can save a bill from becoming a law, where the governor fails to return it with his objections, to the house where it originated within the time limited; "the same shall become a law without his signature unless the general assembly, by its adjournment, prevents its return, in which case it shall not become a law." Such is the unmistakable mandate of the constitution. House Bill No. 19 was not returned during the time limited within which power was vested in the governor to return it with his objections; its return was not prevented by final adournment of the assembly; therefore the bill became a law at the expiration of the time limited, and its subsequent return by the governor to the house, and any action on it taken by the house must be regarded as nullities. When the bill became a law it was the duty of the committee on enrolled bills to deal with it as required by the provisions of sections 228 and 230, Shannon's Code.

In support of the conclusions above reached it may be noted that section 18 of article 3 will not bear the construction that the adjournment of the house in which the bill originates, is sufficient to prevent the return of a bill with the objections of the governor.

To work that result both houses must adjourn; the "general assembly" must adjourn; there must be an end of the session during which the bill originated. A session of the general assembly is an entirety within the meaning of our constitution. If it be a regular session its beginning is fixed by the constitution, section 8 article 2 and the session terminates when both houses composing it shall have adjourned *sine die*. If the general assembly be convened into session by a proclamation of the governor as it may be under section 9 of article 3, its session begins at the time fixed in the call, and ends with its adjournment *sine die*. There is no warrant in the constitution for the idea that a session of the general assembly ends with each temporary adjournment by the joint action of both houses composing it, nor for the idea that a new session begins with each subequent resumption of activity. The session in continuous, although parliamentary and legislative activity, which must be accomplished by human agencies, necessarily cannot be continuous. If the intent of the framers of the constitution had been that a mere temporary adjournment of the house in which a bill originated could prevent its return by the governor within the time limited, no reason can be imagined for their failure to express the idea in plain terms. The words "general assembly" should have been omitted if such was the intent, and the words, "the house in which the bill originated," should have been substituted in lieu.

In the second edition of the American and English Encyclopedia of Law, volume 26, p. 551, the substance of the text is that where there is a constitutional provision that in case of failure of an executive to act upon a bill presented to him within a specified time it shall become a law, it is usually modified by the provision that in case of an adjournment of the legislature before the expiration of the time limited the bill shall not become a law, and that such provisions in a constitution mean a final adjournment, and cases are cited in notes 11 and 12 to sustain the above text.

A learned author on statutory construction has the following text on the same subject:

"Many constitutions provide that an act shall become a law without the governor's signature if he retain it for a certain number of days after it is presented to him for approval (citing *McNeil* v. *Commonwealth*, 12 Bush. [Ky.], 27), unless the adjournment of the legislature shall prevent him from returning it within that time, and in that case that it shall not become a law. The adjournment intended by this provision is a final adjournment, not adjournments from time to time." , Lewis' Sutherland, Statutory Construction (2d Ed.), vol. 1, sec. 62.

To sustain his text the author cites *Miller* v. *Hurford*, 11 Neb., 377, 9 N. W., 477, and *State* v. *Michel*, 52 La. Ann., 936, 27 South., 565, 49 L. R. A., 218, 78 Am. St. Rep., 364.

The doctrine announced by the text-books above cited seems to have had its origin, so far as the Amer-

ican courts are concerned, in the opinion of the justices reported in 3 Mass., 567. This opinion was rendered in 1791, and appears to be the leading case of the line supporting the doctrine as laid down in the above text-books. The holding was followed in the opinions of the justices on the Soldiers Voting Bill rendered in 1864 by the New Hampshire Supreme Court; see 45 N. H., 607. Next in order of date is *Harpending* v. *Haight*, 39 Cal. 189, 2 Am. Rep., 432, decided in 1870; next is *Corwin* v. *Comptroller*, 6 S. C., 390, decided in 1875; next is *Miller* v. *Hurford*, 11 Neb., 378, 9 N. W., 477, decided in 1881; next is *Hequembourg* v. *City of Dunkirk*, decided by the supreme court of New York in 1888 and reported in 49 Hun, 550, 2 N. Y. Supp., 447.

Each of the foregoing cases supports the text above quoted from the text-books, and also of course supports the view which we take in the present case of the meaning of section 18 of article 3 of our constitution. In each of the cases above referred to, the constitutional provision construed by the court was in substance the same as the provision construed by us in the present case. It is insisted for appellant, however, that there is a conflict of authority in the American courts. The conflict is very slight, if it may be said to exist. The first opposing case relied on is *People* v. *Hatch*, 33 Ill., 135. The text of the Illinois Constitution construed by the court in that case was substantially the same as our own with one very material exception; for after the words, "unless the general assembly shall by their adjournment prevent its

return," the section construed in the Illinois Constitution concluded as follows:

"In which case the said bill shall be returned at the first day of the meeting of the general assembly, after the expiration of the said ten days." Const. Ill. 1848, art. 4, sec. 21.

This last-quoted clause is not in our constitution. If it were we could very well reach the same conclusion at which the Illinois court arrived (without, however, adopting all of its reasoning), for it is manifest that the last-quoted clause unerringly indicated the intent of the Illinois Constitution to be that the return of the bill should only be made to the house in open meeting. There was a clearly implied grant to the governor of such additional time in which to make the return as might elapse between the expiration of the ten days expressly granted and the first day of the meeting of the general assembly thereafter. The intent of the Illinois Constitution clearly was that a temporary adjournment of the house should relieve the governor of the duty of making the return during such adjournment; while under our constitution no such intent can be discerned, but a contrary one, as we think, clearly appears. Some of the reasoning of the Illinois court is in conflict with the views we entertain, and with those entertained by the other courts above cited. But it is manifest that the conclusion reached by the Illinois court must be rested upon the peculiar provision of its constitution above set out. The next case relied on by appellant is *State v. South Norwalk*, 77 Conn.,

257, 58 Atl., 759. That case was decided in 1904 and while it construed a section of the Connecticut Constitution similar in substance to our section 18 of article 3, and held that a mere temporary adjournment of the legislature would, within the intent of the Connecticut Constitution, prevent the return of a bill by the governor with his objections to the house in which it originated; yet when examined the decision seems to be rested on a practical construction of the Constitution of Connecticut made by the legislature and chief executives of the State and acted upon by these two departments of the government from the year 1819 down to the time of the decision of the case in 1904. Thus it appears that this practical construction of the Connecticut Constitution by two departments of the State government had continued for a period of eighty-five years, as the opinion recites, "since the creation of the office of executive secretary in 1819 the invariable practice in returning a bill has been to return it by his hand for delivery in open house to the proper officer." Now the constitution construed in that case was adopted in 1818, so that the construction which was sustained by the opinion had been placed upon the constitution practically during the entire period of its existence. The opinion, though rendered long after the establishment of a unanimous current of authority contrary to some of the reasoning contained in the opinion, fails to notice any of the cases holding the opposing view. With the exception of such support as appellant's position may have in the

reasoning of the two cases last-above mentioned, we have been unable to find any support for it in any of the adjudicated cases which we have examined. There is, however, to be found, at section 64, volume 1, Lewis' Sutherland, Statutory Construction, a text apparently supporting appellant's view, but to sustain this text the author cites *People* v. *Hatch,* 33 Ill., 135, which we have discussed supra.

Appellant insists, however, that sections 227 to 230 of Shannon's Code, compiled from chapter 139 of the Acts of 1871 and already set out in this opinion, amount to a construction of section 18 of article 3 of our constitution in conflict with the view which we have expressed. Appellant insists that:

"This legislation clearly contemplates that the five days mentioned in said section 18 were legislative days and not calendar days, and that the bill when vetoed should be returned to the house in which it originated, while the same was sitting, and not while it was in recess, or when the assembly had adjourned, even though temporarily."

Now under our constitution it is provided that:

"The senate and house of representatives, when assembled, shall each . . . sit upon its own adjournments from day to day. Not less than two-thirds of all the members to which each house shall be entitled shall constitute a quorum to do business; but a smaller number may adjourn from day to day, and may be authorized, by law, to compel the attendance of absent members."

See section 11, article 2. Note in the foregoing quotation from the insistence of appellant the word "sitting," in describing the condition in which it insists the house shall be when the return of a bill is made.

In view of the foregoing quotation from the constitution, article 2, section 11, we take it that the word "sitting," in appellant's insistence, means when the house is in legislative session, with a quorum present, because, if any other meaning should be given to the word "sitting," it is apparent that less than a quorum of the membership of the house would have no power to reconsider a bill, if returned while less than a quorum was in the house, and an insistence that the governor might make a return to less than a quorum of the house where a bill originated is tantamount to an insistence that the governor might make a return to one member of the house. We are unable to see the force of the insistence that the legislation above referred to amounts to a practical construction of section 18, article 3, in conflict with the view which we have announced as the true construction of that section. The legislation referred to, as we think, merely outlines a course of conduct in no way in conflict with the plain terms of section 18, article 3. These sections were enacted to promote the orderly administration of the business of the legislative department of the government.

So far as we have judicial knowledge of any practical construction of section 18 of article 3 in this

State, in respect of the return of bills when disapproved by the governor, it has been that such return could be made to the clerk of the house in which the bill originated during a temporary adjournment of that house, or a joint temporary adjournment of both houses. As the word "adjournment" is generally used in this country it may be intended to signify either an adjournment temporary or final in character, and when used as it is in section 18 of article 3, resort must be had to the context to ascertain the true sense. As the word was used in England, at the time Sir William Blackstone wrote, it signified a continuance of the session from one day to another, and, said he:

"This is done by the authority of each house separately every day, and sometimes for a fortnight, or a month together, as at Christmas or Easter, or upon other particular occasions. But the adjournment of one house is not the adjournment of the other. It hath also been usual when his Majesty hath signified his pleasure that both or either of the houses should adjourn themselves to a certain day, to obey the King's pleasure so signified, and to adjourn accordingly. Otherwise besides the indecorum of a refusal, a prorogation would assuredly follow which would often be very inconvenient to both public and private business; for prorogation puts an end to the session, and then such bills as are only begun and not perfected must be resumed de novo (if at all) in a subsequent session; whereas, after an adjournment, all things continue in the same State as at the time of the ad-

journment made, and may be proceeded on without any fresh commencement.'' Bla. Comm., vol. 1, sec. 186.

The distinction between adjournment and prorogation apparent in the above excerpt was made in the opinions of the justices in 3 Mass., 567.

In our opinion the decree of the chancellor was correct, and the same is affirmed, at appellant's cost.