LLOYD T. BINFORD, et al. v. VINCENT J. CARLINE,

Western Section. July 31, 1928.

Walter Chandler and Joseph H. Norville, of Memphis, for plaintiff in error.

Bates, Shea & Frazer, of Memphis, for defendant in error.

HEISKELL, J. This case involves the question as to whether or not the circuit court can review upon certiorari the action of the Board of Censors of Memphis so as to try de novo and pass upon the merits of the controversy.

Lloyd T. Binford, Mrs. M. V. Smith and Milton Picard, plaintiffs in error and respondents below, constitute the Board of Censorship of the City of Memphis; while Vincent J. Carline, defendant in error and petitioner below, is the lessee and operator of the Lyric Theatre in Memphis. The parties will be hereinafter designated according to the positions occupied by them in the lower court. One of the duties of said board is the censorship of moving picture films which are sought to be shown in the city.

V. J. Carline, in the course of his business as lessee and operator of the Lyric Theatre, acquired the right to exhibit at that theatre,

for the week beginning March 5, 1928, a certain motion picture entitled "King of Kings," which picture purports to tell the story of the life of Christ.

On February 27th, Mr. Lloyd T. Binford, as Chairman of the Board of Censorship, addressed a letter to Mr. Carline, stating that the Board had received protests against the showing of this picture, and requesting a preview of the film. Such preview was had on the morning of Monday, March 5th, the day on which the picture was scheduled to open at the Lyric Theatre. All three of the members of the Board of Censorship were present. Following the preview, and on the same day, the Board of Censorship, through Mr. Binford as Chairman and Mrs. Smith as Secretary, addressed to Mr. Carline a letter, directing the deletion of certain scenes from the picture.

Carline refused to make the deletions, and filed a bill in the chancery court of Shelby county, seeking to enjoin any action on the part of the Board to enforce its order. On Wednesday, March 7th, the Chancellor dismissed such bill on demurrer, and dissolved the temporary injunction under which the picture had been showing.

Thereupon, on Thursday, March 8th, Carline filed a petition in the circuit court of Shelby county, praying that a writ of certiorari issue to bring up the action of the Board to the circuit court for review that the decision and orders of such Board be reviewed in the circuit court, "and that this cause be retried in the circuit court," and the orders and decision of the Board superseded.

In view of the fact that the picture was in the midst of its week's run, and all parties were anxious to see the question determined as speedily as possible, the circuit court took up the matter of the certiorari at once, and on May 8th and 9th conducted a hearing of the case which, because of the circumstances and by agreement of the parties, was somewhat informal in its nature.

Upon the matter of the granting of the certiorari being taken up before Judge A. B. Pittman, attorneys for the Board appeared and interposed a demurrer which (by consent and because of the lack of time for drawing papers) was oral in form. The grounds of this oral demurrer were later incorporated into a written motion to dismiss the petition and to all intents and purposes the two may be taken as identical. Both were directed to the sufficiency of the petition, on its face. After hearing the parties, the court overruled both the demurrer and the motion to dismiss, it being the opinion of the court that it was the duty of the circuit court to entertain the petition and to try the entire question de novo.

Following such ruling of the court, it being the desire of all parties that the hearing proceed to immediate conclusion, it was stipulated that the pleas of respondents might be considered as filed, and the written copies actually supplied later, as was done. Thereupon, in

accord with the holding of the court that its duty was to try and determine the entire question de novo, proof was presented by both sides. At the close of all the evidence in the case, the respondents again moved the dismissal of the petition, which motion was overruled. The court thereupon held that the certiorari should be granted, and the supersedeas made permanent.

The respondents duly filed their motion for a new trial, which being by the court overruled, they have appealed and assigned errors.

It is not necessary to set out the assignments in full. The substance of the contention of appellants is contained in assignment four, which is as follows:

"The court erred in holding that, as a matter of law, it had the right and power to try de novo, in this proceeding, those questions of fact previously determined by these plaintiffs in error, as the Board of Censorship of the City of Memphis, after due consideration by them of the circumstances and of the picture itself, and after a decision thereon representing their judgment in the premises."

The holding of the Circuit Judge in overruling the respondent's motion to dismiss is thus expressed by him:

"I therefore overrule the objection—or the demurrer in this case, and hold that under Staples against Brown it is the duty of the circuit court, not the privilege of it but the duty of the circuit court when a petition for certiorari is presented to it, to review the proceedings of any Board, Bureau or Commission that has been created by the legislature that exercised quasi-judicial functions. It becomes the duty of the circuit court to grant the petition and review the matter on the merits."

Having thus passed upon the question raised by the demurrer and motion to dismiss, the court, in accord with the view of the law there expressed, proceeded to hear evidence and to decide the case.

No question is made as to the authority vested in said Board of Censors. It is found in Section 3 of an ordinance of the City of Memphis dated March 22, 1921, and is as follows:

"Be it further ordained, that there is hereby created a board consisting of three members, to be known as the Board of Censors. Said Board of Censors shall have the power to censor, supervise and regulate all public exhibitions, plays, motion pictures, performances, pantomime, or other representations in the City of Memphis. Said Board of Censors shall also have the power to prohibit any public exhibition, play, motion picture, performance, pantomime, or other representation which shall be of immoral, lewd, or lascivious character or any play, pantomime, or other representation or performance inimical to the public safety,

health, morals, or welfare, and any performance, representation, picture or play, denouncing government.''

The Board of Censors received a number of protests against the exhibition of this picture. Some of these came from persons whose ideas of Bible history differed from those of the authors of the film. Other protests came from some of the Jewish people who thought the picture calculated to excite prejudice against their race. These protests and a preview of the picture seem to have been the basis of the action of the board. As we understand it, the only objection to the picture and the reason for its deletion, was that it is ''inimical to the public welfare.''

If the circuit court had authority to try the case de novo and decide it on the merits, there can be no question that there is sufficient evidence to sustain the judgment of that court, and it is not the ground of respondents' contention that there is not such evidence.

Nor is it the contention of respondents that certiorari will not lie from the action of this board and similar boards in certain cases, but that it is common law and not statutory certiorari and that the difference is, that in statutory certiorari the writ is given in lieu of appeal and brings up the case for trial de novo, whereas in common law certiorari the writ lies only when the board has acted beyond its jurisdiction, or illegally within its jurisdiction, and not to correct merely erroneous action. That is to say, in common law certiorari the petition must show that the board has exceeded its jurisdiction, or has acted illegally, otherwise the petition must be dismissed and the writ denied.

In considering this question, we do not think it necessary to start further back in our authorities than Staples v. Brown, 133 Tenn., 639. Counsel for respondents insists that so much of that case as is relied on by counsel for the petitioner and by the court below is mere dicta. The contention is that the court in Staples v. Brown, took facts which justified a common law certiorari and nothing more, and delivered an opinion applicable only to a statutory writ. If we concede this to be true, yet the case has been cited with approval in many cases where this could not be said. It has never been questioned, always approved. Dicta cited with approval in a case in which the question is involved, cease to be dicta. However, we think counsel for respondents take an erroneous view of the opinion in Staples v. Brown, and since that case is made the basis of the opinion of the lower court, is relied on by counsel for appellee and is attacked and criticised by counsel for appellants, it is well to set out a large portion of the opinion in order that it may speak for itself.

In part the opinion is as follows:

''This is a contested election case for the office of city attorney of Harriman, Tennessee. An election was held in Harriman on June 2, 1903, for the election of city officers, and the complainant

and the defendant were candidates for the office of city attorney. The officers holding the election made returns to the election commissioners of Roane County, showing that the plaintiff had received 171 votes and the defendant 172 votes, and a certificate of election was issued to the latter. Thereupon the plaintiff gave the defendant notice that he would contest the election before the city council of Harriman under a provision of the charter of the city vesting the council with jurisdiction to hear and determine contested election of city officers, and afterwards filed with it a formal statement of the grounds of his contest, averring that in said election he had received 173 votes and the defendant only 168 votes, but that the ballots were wrongfully and erroneously counted by the election officers so as to make it appear that his opponent had received a majority of one, when, in fact, contestant had received a majority of five votes, and was duly elected and entitled to the office.

"The defendant filed an answer, in which he denied and put at issue all of the grounds of the contest. The case was heard by the city counsel upon the evidence introduced by the parties, including the ballots cast in the election, which had been preserved.

"The council canvassed and recounted the ballots, but, declining to announce the result, adopted a resolution to the effect that it would abide by the count made by the officers holding the election, and dismissed the contest.

"Plaintiff prayed an appeal to the circuit court of Roane county, which was granted, but at the next term of that court, upon motion of defendant, the appeal was dismissed, because the statute vesting jurisdiction in the council to try the contests did not provide for an appeal from its judgment.

"The plaintiff then filed his petition for certiorari in that court, averring therein the facts here stated, to remove the case into it for a retrial upon the merits, and obtained a proper fiat thereon from the judge of that judicial circuit. This petition, on motion of the defendant, was dismissed, upon the ground that the judgment of the council in dismissing the contest was final and not subject to review by the circuit court, and the case is now in this court upon an appeal, in the nature of a writ of error, to reverse that judgment.

"The trial judge was of the opinion that, since the statute conferring upon the city council of Harriman jurisdiction to try contested elections of officers in the city provided for no review of its judgment in such cases, they were final and conclusive upon the parties, and the circuit court did not have jurisdiction to review them by certiorari.

"We cannot concur in this conclusion. The clause of the charter under which the council assumed jurisdiction of the contest, and which is the entire enactment upon the subject, is as follows:

" 'If the election of any city officer shall be contested, the contest shall be heard and determined by the city council under such rules as the said city council shall have previously established for such hearing.'

"This confers judicial powers upon the council in contests of elections on its officers, and authorizes it to hear and determine them under the rules to be adopted by it. There is an entire absence of any provision for a review of its action or a retrial of the case by any other tribunal, and it is clear that no appeal or writ of error will lie from its judgment, and the trial judge was correct in dismissing the appeal taken by the plaintiff; but it by no means follows that plaintiff is not entitled to a retrial of his case upon the merits in the circuit court of his county.

"The constitution (article 1, section 17) provides that all courts shall be open, and every man having an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

"The obvious meaning of this is that there shall be established courts proceeding according to the course of the common law, or some system of well-established judicature to which all of the citizens of the State may resort for the enforcement of rights denied, or redress of wrongs done them.

"Jurisdiction of certain controversies, including contests of this character, may be vested in county courts, city councils, or boards of commissioners or supervisors, and quasi judicial powers conferred upon them; but their judgments must be, and are, subject to review by the circuit court of the county in which the proceedings are had. These inferior jurisdictions are not courts within the meaning of this provision of constitution, and their judgments cannot be made final and conclusive of the rights of litigants. The right of every one to his day in court cannot be denied him. Railroad v. Bate, 12 Lea, 577.

"Circuit courts have original jurisdiction of all cases where jurisdiction is not conferred upon some other court, and a general appellate and revisory jurisdiction over all inferior tribunals, councils, and boards which may from time to time be created by the legislature and vested with judicial functions, to review their proceedings in all cases where they have exceeded their jurisdiction, or acted illegally or erroneously. Where no appeal or writ of error will lie, this jurisdiction may be exercised

by writs of certiorari and supersedeas, and the case retried upon the merits. In this respect they are analogous to the courts of the king's bench of England. Kendrick v. State, Cooke, 474 Duggan v. McKinley, 7 Yerg., 21.

"They are by the express mandate of the constitution (article 6, sections 1 and 10) required to be established in every county of the state, and are authorized to issue writs of certiorari to remove all civil cases, for sufficient cause, into them from any inferior jurisdiction. Their appellate and original jurisdiction, applicable to this case, is found in Code, sections 4225 and 4234, which are as follows:

" 'The circuit courts of this State are courts of general jurisdiction, and the judges thereof shall administer right and justice according to law in all cases where the jurisdiction is not conferred upon another tribunal.'

" 'They have an appellate jurisdiction of all suits and actions, of whatsoever nature or description, instituted before any inferior jurisdiction, whether brought before them by appeal, certiorari, or in any other manner prescribed by law.' Code (Shannon's Ed.), sections 6063 and 6072.

"They may grant writs of certiorari whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when in the judgment of the court, there is no other plain, speedy or adequate remedy.'

" 'Certiorari lies: (1) On suggestion of diminution; (2) where no appeal is given; (3) as a substitute for appeal (4) instead of audita querela; (5) instead of writ of error.' Code (Shannon's Ed.), sections 4853 and 4854.

"This jurisdiction of the circuit court to supervise and review upon the merits the proceedings of all inferior jurisdictions, especially those proceeding not according to the course of the common law, by certiorari and supersedeas, where no appeal is allowed, or writ of error will lie has been recognized and exercised from the earliest days of our judicial history, and is now too firmly established by constitutional provision, statutory enactment, and judicial decision to be a subject of controversy."

The opinion then takes up the discussion of preceding cases in this State and holds that where not in line with the opinion being delivered they are in irreconcilable conflict with the long line of Tennessee cases cited. The opinion then concludes:

"The plaintiff claims in his petition, which must be taken as true for the purposes of this hearing, that he has been elected to the office of city attorney of Harriman, that he has been denied the right to exercise the functions and receive and enjoy the

emoluments of this office, and that he is entitled to his day in court to have his title to the office tried and determined. We think that he has this right, and that he has pursued the proper remedy to enforce it. The judgment of the circuit court dismissing his petition will therefore be reversed and the 'case remanded to that court for a retrial upon the merits.''

Diligent and able counsel for appellants have gone to the original record in Staples v. Brown, and quote in the brief from the petition for certiorari in that case, as follows:

"Petitioner has been informed and believes' that when the members of said City Council recounted said votes they also found the majority in favor of petitioner, and by wrongfully refusing to announce the result of said count when that was the only issue presented to them, they wrongfully and unlawfully attempted to deprive petitioner of the right to hold said office.''

Based upon the language of this petition, counsel argue that there was room to hold that the circuit court had jurisdiction to entertain the petition and grant the writ, not in order to try the case on the merits but to determine whether or not the City Council had acted illegally in refusing to announce the result of the count. In other words, the writ could issue to try the question as to the City Council of Harriman having acted illegally in counting and' refusing to announce the result, but not to try the question as to the petitioner's right to the office to which he had been elected. To try the question of illegal conduct but not the question of wrongful results..

This is too narrow a view to take of this opinion. It holds that petitioner was entitled to a trial in court, that he could not obtain it by appeal or writ of error, therefore he was entitled to it on certiorari. He asked a trial on the merits and this is what the court awarded him. The court said petitioner had a constitutional right to try his property right in the office he claimed in a court and as he did not have it by appeal, he did have it by certiorari. This was statutory certiorari in place of appeal. It could not be common-law certiorari, because that exists only in aid of appeal. That is where the remedy by appeal or writ of error exists but is inadequate. To say that the case of Staples v. Brown only involved a common-law writ in which lack of jurisdiction or illegality of conduct alone could be questioned is in conflict with the whole contention of the brief for respondents, that the writ is always a statutory writ where no right of appeal lies, and where certiorari takes the place of appeal in giving the citizen his right to a trial in court.

Staples v. Brown, and other cases settle this. When no appeal or writ of error is provided from the action of a board passing upon a constitutional right, the petitioners for certiorari may bring the case to the circuit court, both as to the want of jurisdiction and

illegality of procedure, and also upon the erroneous conclusions reached, and may have a trial de novo on the merits if that be necessary. The attack as to want of jurisdiction or illegality may be sufficient to meet all the rights of petitioner. In that event it is not necessary to consider the question of error. But if an appeal is provided and petitioner needs other relief, he may bring up the action for review as to want of jurisdiction and illegality alone and not as to error.

If there remained any doubt as to this construction of the opinion in Staples v. Brown, we need only to examine the cases in which that case has been cited and approved in order to be sure as to the meaning attached to it by our courts.

In State v. Bochman, 139 Tenn., 547, there was an appeal in the nature of a writ of error from proceedings had in the Juvenile Court of Overton county wherein Verbal Bochman was adjudged to be a delinquent child. His motion for a new trial being overruled, an appeal in the nature of a writ of error was prosecuted directly to the Supreme Court. No provision was made for an appeal from the judgment of the Juvenile Courts in the statute creating said courts.

The court held that it was without jurisdiction, the remedy being by certiorari, citing and approving Staples v. Brown, as follows:

"Staples v. Brown, reviews all of the earlier cases and holds that the circuit court has a general appellate and revisory jurisdiction over all inferior tribunals created by the legislature and vested with judicial powers. The jurisdiction of the circuit court may be invoked by certiorari and supersedeas where no appeal or writ of error lies for the correction of the judgments of such inferior tribunals. Such jurisdiction may be exercised not only when the inferior tribunals have exceeded their powers or are acting irregularly, but for errors of fact and law committed by them, to the end that the case may be tried again upon its merits."

To the same effect is Jones v. State, 139 Tenn., 547, in which a review of the judgment of the Juvenile Court, on its merits, was sought. The court in its opinion, page 548, stating that statutory certiorari would lie, said:

"We have explained in State of Tennessee ex rel v. Verbal Bochman, 139 Tenn., 422, 201 S. W., 741, opinion just filed, that we inadvertently took jurisdiction in Childress v. State, supra, and that certiorari from the circuit court does lie to review the action of the Juvenile Court. It is statutory certiorari which will issue in this case, to the end that the case may be tried again upon its merits in the circuit court (Staples v. Brown, 113 Tenn., 641, 85 S. W., 254), and not the common-law writ of certiorari which opens for review merely the legality of the action of the

inferior tribunal (Conners v. City of Knoxville, 136 Tenn., 428, 189 S. W., 870).''

It will be observed in both the above cited cases, it was sought to review upon the merits the decision of an inferior tribunal, where no appeal was provided, and the court, citing and approving Staples v. Brown, awarded statutory certiorari.

The case of State Board of Medical Examiners v. Friedman, 150 Tenn., 174, in discussing certiorari cited and approved Staples v. Brown, saying:

"Undoubtedly the complainant had the right to review the action of the State Board of Medical Examiners by certiorari.''

The last case on this question is City of Nashville v. Martin, 156 Tenn., 443, 3 S. W. (Second Series), 165. We consider this so important in connection with Staples v. Brown, that we will set out a large part of the opinion as follows:

"Martin was a member of the police force of Nashville and was tried upon charges, preferred by the chief of police, before the civil service and pension board of the city. He was found guilty of the charges by the board and dismissed.

"He thereupon filed a petition for certiorari in the circuit court of Davidson county to review the action of the civil service board. Over exceptions by attorneys for the city, the writ of certiorari was granted by the Circuit Judge and a trial de novo upon the charges preferred against Martin was had before the court and a jury. The jury found a verdict in favor of Martin, and a judgment was entered in the circuit court directing that the charges brought against him be dismissed. A motion for a new trial was made and overruled and the city thereupon appealed in error to the Court of Appeals. Upon the theory that a constitutional question was involved, the Court of Appeals transferred the case to this court where it has been presented with some elaboration.

"Upon the hearing in the circuit court, counsel for Martin conceded the legality of the trial before the civil service and pension board and conceded the jurisdiction of that tribunal to hear and determine the issues submitted. Counsel also conceded that there was evidence to sustain the findings and order of the civil service board, and added:

" '. . . We brought this case up here because we think it was erroneously decided on questions of fact; that is what we want to try out in this court.'

"And again:

" '. . . We are making no question of the fact that they had evidence down there before the civil service commission; everybody knows they had evidence down there; we say they reached the wrong conclusion from the evidence.'

"The charges preferred against Martin, upon which, after notice to him, proof was introduced and a full hearing had before the civil service board, and of which he was found guilty, were drunkenness, neglect of duty, and conduct unbecoming an officer. It is not suggested that any of these were frivolous charges.

"The question therefore, presented in this court is whether the findings of the civil service and pension board upon controverted issues of fact in a case like this may be tried de novo in the circuit court before the court and a jury. The present charter of the City of Nashville is contained in chapter 125 of the Private Acts of 1923. Section 49 of that act creates a civil service and pension board to consist of five members, provides for the selection of its members, and fixes their terms. It is made the duty of the board to ordain rules and regulations for the government of the members of the police department and of the fire department and other civil service employees of the city. The board is given authority to punish by dismissal from office all such employees for offenses committed by them. It is, however, provided that such employees shall not be punished 'except after a trial and conviction by said civil service and pension board upon a written charge or charges, and a copy of said charges shall be furnished the accused at least five days prior to such trial.' Following this are other provisions with reference to procedure before the civil service board, not material in this inquiry, and it is then enacted:

" 'The judgment and findings of the civil service and pension board on all questions of fact in the trial of charges preferred against civil service employees under the provisions of this act shall be final and subject to review only for illegality or want of jurisdiction.'

"The argument made to sustain the proceedings had in the circuit court is that the certiorari awarded in this case was the statutory writ, under which it is said a trial de novo was proper (Staples v. Brown, 113 Tenn., 639, 85 S. W., 254), and not the common-law writ of certiorari, under which the only matters of inquiry would be whether the civil service board exceeded its jurisdiction or acted irregularly. Conners v. Knoxville, 136 Tenn., 428, 189 S. W., 870; Id., 139 Tenn., 45, 201 S. W., 133.

"Referring to the statutory writ of certiorari, in Staples v. Brown, supra, this court said:

" 'There is, then, no doubt but that the circuit court has a general appellate and revisory jurisdiction over all inferior tribunals created by the Legislature and vested with judicial powers, which it may exercise by certiorari and supersedeas where no appeal or writ of error will lie, for the correction of their judgments, not only when they have exceeded their jurisdiction or

are acting irregularly, but for errors of fact or law committed by them.'

"As a reason for the conclusion reached in Staples v. Brown, the court called attention to article 1, Sec. 17, of the Constitution, providing that all courts should be open, and every man having an injury done him in his lands, goods, person or reputation should have remedy by due course of law, and right and justice administered without sale, denial, or delay.

"The court said that the obvious meaning of this section of the Constitution was that there should be established courts proceeding according to the course of the common law, or some system of well established judicature, to which all citizens of the state might resort for the enforcement of rights denied, or redress of wrongs done them. It was added that inferior tribunals, such as boards and commissions, were not courts within the meaning of article 1, sec. 17 of the Constitution, and their judgments could not be made final and conclusive of the rights of litigants; that every one was entitled to his day in court. Staples v. Brown, supra, reviewed all our earlier cases and has been repeatedly followed in subsequent decisions.

"It was, of course, assumed in Staples v. Brown, laying down the principles just stated, that the citizens petitioning for the writ of certiorari had sustained legal injury or damage, that his petition presented a justiciable controversy—a controversy "liable to trial in a court of justice.''

"The petitioner in this case seeking to reopen in the circuit court this question of fact, his guilt or innocence of the charges preferred against him before the civil service board, did not present a justiciable controversy to that court. For by the act of the Legislature the judgment of the civil service board on all questions of fact on the trial of the charges preferred against him was made final. The Legislature undoubtedly attempted to take away from the courts the power to consider the questions raised on the petition for certiorari, and in this effort we think the Legislature was well within constitutional limitations.''

This case is an unqualified approval of Staples v. Brown as controlling the large class of cases to which it is applicable, and shows that case to be a case of statutory certiorari. The only reason the case of Nashville v. Martin, was not affirmed was because it did not present a justiciable controversy to the circuit court. If it had presented such a controversy as Staples v. Brown did, the trial on the merits would have been sustained. The only reason a justiciable controversy was not presented was on account of the provision in the city charter making the findings of the board final as to all questions of fact and the holding that this was constitutional. There was no such provision as to the findings of the city council in Staples v.

Brown, and if there had been, it would have been unconstitutional, as the case involved the right to an office, a right protected by the constitution.

It remains to be considered, whether or not the present case can be distinguished from Staples v. Brown. In his opinion in that case, Mr. Justice Shields admits that there is one case in this State which cannot be reconciled with the rule laid down and says:

"The case of Tomlinson v. Board of Equalization, involved a question of assessment of general property for taxation under the provisions of the assessment law of 1887, and the decision was rested upon grounds of public policy and necessity, the court being of the opinion that, if every taxpayer was allowed to contest the assessable value of his property for taxation in the courts, the delays in the collection of the revenues of the State which would necessarily follow would greatly embarrass and imperial the proper administration of public affairs."

This Tomlinson case, 88 Tenn. 1, is more like the present case than any other case in this State. It was a petition for certiorari and supersedeas to review in the circuit court the action of the board of equalization of Grainger county because upon petitioner's complaint as to an excessive assessment, the board refused to allow him to call witnesses to show the value of the property assessed. The court, referring to the Statute creating the board of equalization, says that the act contemplates no issue of fact on hearing of evidence as to values and then says:

"To hold that it was their duty to permit the examination of witnesses offered by a complainant would imply a duty to the State and county to hear and examine witnesses to sustain the assessment. All this would imply a trial and a judgment upon weight of proof. The question of valuation is altogether a matter of opinion. Upon questions of opinion the greatest diversity may be expected. The sessions of this Board terminate in two weeks, and at the end of that time they are required to return the assessment lists and their corrections to the clerk of the county court. In populous counties the assessments reach into the thousands. That each tax-payer should have the right to come with his witnesses, and have them heard and be heard by counsel, would result in such delay and embarrassment as to amount to a great public peril with regard to the assessment of the public revenues. No legislative body could have seriously contemplated such a tribunal to determine a mere question of an excessive valuation for purposes of assessment. Occasional instances of excessive assessments may occur, but they had better be borne than that such a court should be created to settle them."

The analogy between that case and the present case is striking. The censorship ordinance and statute authorizing it evidently con-

template no issue of fact or hearing of evidence. If the question of value of property is a matter of opinion, the question as to whether or not an exhibition is immoral, lewd or inimical to the public safety, health, morals or welfare is a matter of opinion, as to which a greater variety of views could be expected than as to the value of property. If it would be inconvenient and impracticable for the board of equalization to handle contests of proof a fortiori it would be for the board of censors. And with even more force can it be said as to the board involved here that "no legislative body could have seriously contemplated such a tribunal." If the exhibition or performance must go on while proof is heard either by the board or by the court on certiorari, the injury to the public intended to be prevented will be suffered in all cases and the censorship will become a futile gesture. If the performance or exhibition is such as to have a pernicious influence on the public, even one appearance has an effect which cannot be cured. We have nothing to do with the question as to whether or not this is wise legislation. The purpose of it is to prevent certain kinds of exhibitions, and this purpose would be destroyed by requiring a hearing on testimony of witnesses to establish the soundness of the opinion of the censors.

Nashville v. Martin, supra, is distinguished from Staples v. Brown, on the ground that the finding of the Civil Service & Pension Board on all questions of fact shall be final and subject to review only for illegality or want of jurisdiction and that this was not unconstitutional because no one has a constitutional right to be employed by a municipality except upon terms prescribed by law. The court held that the case therefore presented no justiciable controversy such as presented in Staples v. Brown and other cases. It is true, the statute and ordinance do not in express terms make the findings of the censors final, but in the Tomlinson case, 88 Tenn. page 9, the court says, "when an act creating a special tribunal, even one exercising judicial functions gives power and authority to settle particular grievances such as this, and either expressly or by plain implication declares that the judgment of such special tribunal shall be final, and it confines itself within its jurisdiction and does not act illegally the writ of certiorari will not lie to review its action upon the merits." Considering the purpose of creating the board of censors, the duties imposed upon them and the circumstances under which they must act, it may well be said to be a necessary implication that their action shall be final so far as to preclude review on the merits.

The denial of review on certiorari contravenes no constitutional right because the legislation is well within the police power of the State. It may therefore be said that the case does not present a justiciable controversy, but the action of a board necessarily final as to the merits, a board representing the public, as against an exhibitor

who can claim no constitutional right to produce a play or picture such as forbidden by the ordinance. On this question, assuming that plain implication is equivalent to express provision as to finality of findings on the merits, the case is stronger than Nashville v. Martin, and on the other grounds discussed above, it is stronger than Tomlinson v. Board of Equalization.

While, therefore, the authority of Staples v. Brown is unquestioned, as to the class of cases to which it is applicable, that, is, where it is sought to review the action of a board from which no appeal is provided and the petition presents a justiciable controversy, one which the petitioner has a constitutional right to have determined, then the writ may be granted and the case heard de novo on the merits. But for the reasons given, we think this case must be distinguished from Staples v. Brown just as Tomlinson v. The Board of Equalization, and Nashville v. Martin, are to be distinguished. It follows that the judgment of the lower court must be reversed and judgment entered in this court dismissing the petition for writ of certiorari. The defendant in error will pay the costs of the appeal and also of the lower court.

Owen and Senter, JJ., concur.