## JOHN KNAPP AND OTHERS v.
## WILLIAM J. O'BRIEN.
## NICHOLAS D. COLEMAN AND OTHERS,
## PLAINTIFFS IN INTERVENTION.

179 N. W. (2d) 88.

July 24, 1970—No. 42368.

*John Knapp, John J. Todd,* and *Leif R. Langsjoen,* pro se, for appellants.

*H. Blair Klein,* Senate Counsel, *Bruce D. Campbell,* Assistant Senate Counsel, and *Thomas Clifford,* Director of Research, House of Representatives, for intervening appellants.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor

General, and *James M. Kelley,* Assistant Attorney General, for respondent.

*Charles H. Clay, Earl F. Colborn, Jr., Harold D. Field, Jr., Richard J. Fitzgerald, William Hempel, C. Paul Jones, Greer E. Lockhart, James Martineau, John McGrory, John W. Mooty, Peter Seed, John Sullivan,* and *John W. Windhorst,* for Citizens League, amicus curiae.

*James L. Hetland, Jr., David L. Graven, Samuel H. Morgan, Raymond D. Black,* and *Orville C. Peterson,* for Metropolitan Park Reserve Board, amicus curiae.

KNUTSON, CHIEF JUSTICE.

This is an action for a declaratory judgment to determine the constitutionality of L. 1969, c. 1125, passed by the Legislature during the last session.

The facts, which are not in dispute, have been stipulated. Plaintiff-appellants, John Knapp, John J. Todd, and Leif R. Langsjoen, are duly appointed members of the Minnesota Tax Court. Intervenor-appellants Nicholas D. Coleman, Stanley W. Holmquist, and Gordon Rosenmeier are members of the Minnesota Senate; intervenor-appellants Aubrey W. Dirlam, Robert W. Johnson, and Martin O. Sabo are members of the Minnesota House of Representatives. Respondent, William J. O'Brien, is the auditor for the State of Minnesota.

The Senate and House of Representatives convened in regular session on Tuesday, January 7, 1969. L. 1969, c. 1125, was introduced in the House of Representatives on March 6, 1969, as H. F. 1448. The bill would have changed the compensation of members of the Tax Court from a per-diem to a calendar-year basis. The House of Representatives gave final approval to this bill on May 22, 1969, and the Senate, on May 26, 1969, the day on which each house individually adjourned sine die. On May 26 both houses convened for the transaction of business. The House of Representatives, with but one recess, proceeded with its business to adjournment sine die. The Senate, after transacting some of its business, recessed and reconvened at 2 p. m. After its

recess, the Senate gave final approval to H. F. 1448 and sent it to the officers of the House of Representatives for enrollment and transmittal to the governor. H. F. 1448 was received by the officers of the House of Representatives after the house had adjourned sine die. The Journal of the Senate shows that May 26, 1969, was the 102nd day of actual sessions.

The members of the Tax Court have demanded that the state auditor recognize and implement the provisions of L. 1969, c. 1125, but the auditor has refused to do so and has communicated his intention to persist in such refusal until validity of the act has been determined by the courts.

The constitutional provisions involved are Minn. Const. art. 4, § 1, which states:

"The legislature shall consist of the Senate and House of Representatives. The senate shall be composed of members elected for a term of four years and the house of representatives shall be composed of members elected for a term of two years by the qualified voters at the general election.

"The legislature shall meet at the seat of government in regular session in each odd numbered year at the time prescribed by law for a term not exceeding 120 legislative days; and no new bill shall be introduced in either branch, except on the written request of the Governor, during the last 30 days of such sessions.

"A special session of the legislature may be called as otherwise provided by this constitution."

and art. 4, § 22, which provides:

"No bill shall be passed by either house of the legislature upon the day prescribed for the adjournment of the two houses. But this section shall not be so construed as to preclude the enrollment of a bill, or the signature and passage from one house to the other, or the reports thereon from committees, or its transmission to the executive for his signature."

On the basis of the stipulation of facts, the trial court granted respondent's motion for summary judgment on the grounds that

L. 1969, c. 1125, was passed by the Senate after the expiration of the 120 legislative days exclusive of Sundays permitted by the constitution and was therefore unconstitutional and void. This appeal followed.

The question raised here is what is a legislative day within the meaning of Minn. Const. art. 4, § 1.

Appellants contend that "legislative day" means any day on which the Legislature actually meets, while respondent contends that a legislative day is any day on which the Legislature may meet, which includes each calendar day from the day of convening, excluding only Sundays.

Appellants and amici curiae devote most of their briefs and arguments to the desirability of a more flexible legislative session in order to more efficiently cope with the growing complexities of legislative work, but they do not come to real grips with the decisive issue involved. From a policy standpoint we might well agree that there is much merit in these arguments, but that is not before us. The present constitutional provision came into being by amendment of the constitution in 1962. The constitution belongs to the people. They have adopted it and they alone can amend it. Neither the Legislature nor this court has any right to bypass the people under the guise of a liberal interpretation which in effect would amend the constitution, no matter how desirable the amendment might be.

The historical record of the adoption of our constitution and the amendments pertinent to the issue before us may shed some light on a determination of what the people intended when they brought about the amendment of art. 4 in 1962. Originally, art. 4, § 1, simply provided that the Legislature should meet "at such times as shall be prescribed by law." No limitation on the length of the session was provided. Within 3 years after the adoption of the constitution, this provision was amended by adding to § 1 the clause "but no session shall exceed the term of sixty days."[1] In 1873 two amendments were proposed, one of which

---

[1] L. 1860, c. 22.

would have established a system of biennial sessions and limited them to 70 days; the other would have made the terms of representatives and senators 2 and 4 years respectively.[2] Both of these proposed amendments were defeated by the people. In 1877 they were resubmitted, with the modification that the sessions were not to exceed 60 days. This time they were adopted.[3] Apparently the 60-day term was insufficient to permit completion of the Legislature's work. In 1881 the Legislature proposed that the time limit be entirely removed, but this was defeated by the people.[4] In 1888 an amendment was adopted under which biennial sessions were extended to 90 *legislative days* with the proviso that "no new bill shall be introduced in either branch, except on the written request of the governor, during the last twenty (20) days of such sessions, except the attention of the legislature shall be called to some important matter of general interest by a special message from the governor."[5]

The constitution remained as amended in 1888 until the 1962 amendment. For a history of these amendments, see Anderson, A History of the Constitution of Minnesota, p. 165.

In 1905 the legislature requested the opinion of the attorney general as to the last day of the legislative session under the constitution as it then existed. He calculated the number of days the Legislature could constitutionally exist, and stated the following (Journal of the House, 1905, p. 902):

"I have the honor to advise you that, in my opinion, the term will expire on April 18th. This computation is made upon the basis which has prevailed since 1889 of determining the duration of the term by excluding Sundays and legal holidays and counting only legislative days since the term began. Using the same basis for computing the last twenty days of the session,

---

[2] L. 1873, c. 3.

[3] L. 1877, c. 1.

[4] L. 1881, c. 2. See, Anderson, A History of the Constitution of Minnesota, p. 165.

[5] L. 1887, c. 3.

during which the introduction of bills is prohibited, it will leave March 26th as the last day upon which bills can be introduced without the request of the Governor but as March 26th is Sunday it leaves Saturday, March 25th as the last day for the introduction of bills. This basis for the computation of 'the last twenty days' of the session agrees with the opinion rendered to the last session of the Legislature by my predecessor, Judge Douglas."

At subsequent sessions thereafter, the Legislature has requested the attorney general's opinion as to when the sessions must end. Each time the attorney general has given his opinion based upon the same calculation as in 1905. The Legislature has accepted these opinions as the proper construction of our constitution over all these years. Not only the Legislature but the governor has acted upon the assumption that the computation of time during which the Legislature can legally meet as stated by the attorney general was the correct interpretation of our constitution. In 1959 the Legislature convened on January 6 and adjourned sine die on April 21 pursuant to the advice of the attorney general. Governor Freeman called the Legislature into special session beginning on April 25, 1959. The extra session adjourned sine die July 1, 1959. In 1961 the Legislature adjourned sine die April 17 pursuant to the advice of the attorney general. The governor called the Legislature into special session on April 24 and in so doing said in part:

"WHEREAS basic appropriation and revenue measures needed to provide for the operation of our state government for the next biennium and other matters of importance have not been enacted during the regular session of the legislature, creating an extraordinary occasion therefor,

"Now, THEREFORE, I, Elmer L. Andersen, Governor of the State of Minnesota, do hereby summon the Legislature and the members thereof to convene in extra session on Monday the 24th of April, 1961 at eleven o'clock in the forenoon of that day, at the Capitol in Saint Paul, Minnesota.

"It is my hope that in the week between the close of the regular and the opening of the extra session the members can get some sorely needed rest and also visit extensively with their constituents to get a clear understanding of how our people want the extra session to resolve the revenue problem."

It may be of some significance that in the special session thus called in 1961 a proposal was made to amend the constitution to extend the term of the Legislature to 120 days.[6] So far as material it reads:

"The legislature shall meet at the seat of government in regular session in each odd numbered year at the time prescribed by law for a term not exceeding 120 legislative days; and no new bill shall be introduced in either branch, except on the written request of the Governor, during the last 30 days of such sessions.

"A special session of the legislature may be called as otherwise provided by this constitution.

"Sec. 2.  This proposed amendment shall be submitted to the voters for approval or rejection at the general election for the year 1962 in the manner provided by law. The ballots used at the election shall have printed thereon:

" 'Shall the Constitution of the State of Minnesota, Article IV, Section 1, be amended so that (a) the regular session of the legislature will not be limited to 90 days but will be held in odd numbered years at the time prescribed by law, and for a term not exceeding 120 legislative days?

" 'Yes  . . . . . . . . . . . . . . . . . . . . .
" 'No  . . . . . . . . . . . . . . . . . . . . .' "

That proposal was adopted by the people in 1962 and is the provision of the constitution now before us.

If a proposed amendment of the constitution is to be submitted to the people, Minn. St. 3.21 requires the attorney general to furnish an interpretation of what the effect of the amendment will be. The pertinent portions of this statute read:

"At least four months preceding such election, the attorney

---

[6] Ex. Sess. L. 1961, c. 100.

general shall furnish to the secretary of state a statement of the purpose and effect of all amendments proposed showing clearly the form of the existing sections, and of the same as they will read if amended, except that when any section to which an amendment is proposed exceeds 150 words in length, the statement shall show that part of the section in which a change is proposed, both in its existing form and as it will read when amended, together with such portions of the context as the attorney general deems necessary to an understanding of the proposed amendment. In the month of October prior to the election, the secretary of state shall give two weeks published notice of such statement in all legal newspapers of the state. * * * The secretary of state shall also forward to each county auditor copies of such statement, in poster form, in quantities sufficient to supply each election district of his county with two copies thereof. The auditor shall cause two copies to be conspicuously posted at or near each polling place on election day. Wilful or negligent failure by any official named to perform any duty imposed upon him by this section shall be deemed a misdemeanor."

This requirement came into being in 1887.[7] It has existed, substantially as originally enacted, since that time. It is evident that the Legislature has been mindful of the fact that frequently people who are not educated in law do not understand the legal terminology of a proposed constitutional amendment and, for that reason, has required that the attorney general explain it to them so they understand what they are voting on. Pursuant to this legislative mandate the attorney general, in explaining the proposed amendment to be voted on in 1962, said:

"[This amendment] authorizes a *one hundred and twenty day* regular session of the legislature each odd-numbered year and deletes the present *ninety day* limit." (Italics supplied.)

The same is true of the amendment adopted in 1888 when the

---

[7] L. 1887, c. 157.

words "legislative day" first came into existence. In informing the electorate what the amendment would accomplish, as required by the statute adopted in 1887, the attorney general stated among other things:

"The constitution at present provides for biennial sessions, and the effect of this last amendment will be to continue biennial sessions, but instead of such sessions being limited to *sixty days, as they are now,* they would be limited to *ninety days,* and no bill could be introduced during the last twenty days except as provided for in such amendment." (Italics supplied.) [8]

That is what the people voted on. There is no indication, either in the proposed amendments of 1888 and 1962 or in the explanation of either by the attorney general, that the interpretation theretofore placed upon art. 4, § 1, should be changed, except to extend the session—first from 60 to 90 days, and then from 90 to 120 days.

Inasmuch as the term "legislative days" was not used in the attorney general's statement involving either the 1888 amendment or the 1962 amendment, it can hardly be contended, we believe, that the people had in mind changing the manner of computing the number of days during which the Legislature could be in session.

After the 1962 amendment, the Legislature in 1963, 1965, 1967, and 1969 continued to ask the attorney general for his opinion as to the duration of the session. In all but the 1969 session the Legislature concurred in that opinion. In 1967 the Legislature convened on January 3. They adjourned on May 22, which was the 102nd day of actual legislative sessions and is so shown by the Senate journal. As had been done by governors prior to

---

[8] The original attorney general's statement which the law requires be filed in the office of the secretary of state has been lost, but a published copy of the statement, as also required by law, may be found in the St. Paul Pioneer Press of October 12, 1888, preserved by the Minnesota State Historical Society.

the 1962 amendment, immediately after adjournment Governor LeVander called an extra session, to convene on Tuesday, May 23, 1967, at 2 p. m. The House and Senate adjourned on June 2, 1967, after 8 days of legislative meetings during which they completed work they were unable to complete within the session as advised by the attorney general.

While the argument that practical construction of the constitution does not have a binding force may be of some validity where the matter involved includes only an interpretation of language that may have an ambiguous meaning, in City of Faribault v. Misener, 20 Minn. 347, 352 (396, 401), we said:

"A practical construction of the constitution, which has been adopted and followed in good faith by the legislature and people for many years, is always entitled to receive great consideration from the courts."

Here there is no question but that the Legislature, the attorney general, and several governors have interpreted art. 4, § 1, to mean that the Legislature may not meet in regular session more than 120 calendar days, now excluding Sundays. Formerly, holidays were also excluded, but Minn. St. 645.44, subd. 5, was amended in 1959 to provide that "[n]o public business shall be transacted on any holiday, except in cases of necessity and except in cases of public business transacted by the legislature." Since that time only Sundays have been excluded from the computation of the length of the legislative session.

In view of this long legislative history, how can it be said that the people intended to ignore it when voting on the constitutional amendment in 1962?

Appellants rely on several foreign cases that construe the words "legislative days" to mean what appellants and amici curiae would like us now to construe them to mean.[9] There are

---

[9] The two most widely cited authorities defining a legislative day are Moog v. Randolph, 77 Ala. 597, and Opinions of the Justices, 216 Ala. 545, 113 So. 621. In the Moog case the court construed the length of the

also cases holding that long acceptance of a practice is entitled to great weight.[10] We do not believe these foreign decisions are binding upon us and we conclude it would be contrary to the understanding of the people to hold that they intended to accomplish in 1962 what appellants now seek to have us ordain by judicial decision instead of by constitutional amendment. It goes without saying that the people generally were unfamiliar with these foreign decisions when they voted on the amendment. To the contrary, it must be assumed that they relied on the attorney general's explanation of the effect of the amendment.

Kentucky, confronted with the same problem, attempted to amend its constitution. The pertinent portion of section 42 of the Kentucky constitution provides:

"* * * [N]or shall a session of the General Assembly continue beyond sixty legislative days, exclusive of Sundays and legal holidays * * *. A legislative day shall be construed to mean a calendar day."

---

legislative session exactly contrary to that which has been followed in Minnesota for many years. The court said (77 Ala. 608): "This question [length of the legislative session] has been repeatedly considered by the judiciary committees of the Senate and House of Representatives, at successive sessions of the General Assembly, since the adoption of the Constitution; and their reports, concurring in this view, have in each instance been adopted by those bodies. Even if we regarded the question a doubtful one, we would hesitate to depart from this settled legislative construction of the fundamental law, especially in view of the serious consequences which would necessarily flow from it." As a matter of fact, since the court adhered to well-established construction, the case really supports respondent's position rather than appellants'. See, also, Cheyney v. Smith, 3 Ariz. 143, 23 P. 680; Shaw v. Carter, 148 Okla. 57, 297 P. 273; Okanogan Indian Tribes v. United States, 279 U. S. 655, 49 S. Ct. 463, 73 L. ed. 894; White v. Hinton, 3 Wyo. 753, 30 P. 953.

[10] Walker v. Baker, 145 Tex. 121, 196 S. W. (2d) 324; State ex rel. White v. Grant Superior Court, 202 Ind. 197, 172 N. E. 897, 71 A. L. R. 1354; State ex rel. Heck's Discount Centers, Inc. v. Winters, 147 W. Va. 861, 132 S. E. (2d) 374, which contains an interesting discussion of the practice of stopping or covering the clock at midnight.

The section does not say whether "legislative days" are consecutive calendar days, so an amendment to the constitution was proposed to clarify its meaning. The proposed amendment, although rejected by the voters, stated:

"The General Assembly shall be a continuing body. It shall meet annually in regular session for not longer than sixty legislative days, which need not be consecutive, but no regular session shall continue beyond the thirtieth day of June of the year. A legislative day shall be construed to mean a calendar day on which either house of the General Assembly is in session."

Our Legislature could easily have submitted a similar amendment to the people or, as has been done in prior years, the governor could have called a special session following the adjournment of the Legislature during which the bill now under consideration could validly have been passed. We do not speculate on why he did not do so. Had a constitutional amendment been proposed in 1969 it could have been voted on in 1970 and, if approved by the people, could have become operative by the time the next session convenes. We are not persuaded that we should take from the people their prerogative to pass on this matter. From the legislative history of this provision of our constitution, particularly the defeat of some of the proposed constitutional amendments, it is apparent that the people were not always in favor of unlimited sessions of the Legislature.

The trial court came to the right conclusion and must be affirmed. In view of our decision on the decisive issue of the case, we do not reach the other questions raised by the appeal.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.