STATE v. VERNON HOPPE,
HENNEPIN COUNTY TREASURER.
ROBERT L. HERBST, COMMISSIONER OF NATURAL
RESOURCES, v. NORTHERN STATES POWER COMPANY.
VAL BJORNSON, STATE TREASURER, v. RUSSELL W.
FRIDLEY, DIRECTOR OF THE MINNESOTA
HISTORICAL SOCIETY, AND ANOTHER.

215 N. W. 2d 797.

February 26, 1974—Nos. 44733, 44737, 44738.

*Gary W. Flakne,* County Attorney, and *Richard T. Todd,* Assistant County Attorney, for appellant in Appeal No. 44733.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Chief Deputy Attorney General, and *Bruce D. Campbell,* Special

Assistant Attorney General, for respondent in Appeal No. 44733 and for appellants in Appeals Nos. 44737 and 44738.

*Harold J. Bagley,* for respondent in Appeal No. 44737.

*Richard H. Kyle,* for respondents in Appeal No. 44738.

KNUTSON, JUSTICE.*

These cases involve interpretation of a 1972 amendment to Minn. Const. art. 4, § 1, respecting the time during which the legislature may meet. While there are some issues peculiar to each case, there are overriding issues affecting all so the cases have been considered together in so far as the issues in one case may have a bearing on the determination of issues common to all.

The legislature is now in an adjourned session (i. e., a session provided for upon adjournment in May 1973 to a day certain in January 1974), and in order to obtain an expeditious decision of the questions involved in these three cases, the parties have all waived the right to oral argument and stipulated that the cases could be heard and determined on the written briefs. We will deal with the questions that affect each case separately and the questions that jointly affect all will be discussed together.

These three actions were commenced separately for declaratory judgments to determine whether Senate File 386 (L. 1973, c. 689); Senate File 1726 (L. 1973, c. 782); and House File 1772 (L. 1973, c. 783) were valid enactments of law by the legislature. The appeals are from summary judgments declaring that the laws are valid.

Prior to the 1972 amendment, Minn. Const. art. 4, § 1, provided in part:

"The legislature shall meet at the seat of government in regular session *in each odd numbered year* at the time prescribed by law for a term not exceeding 120 legislative days * * *." (Italics supplied).

---

*Retired Chief Justice acting pursuant to Minn. St. 2.724.

By the amendment of 1972, art. 4, § 1, was amended to read:

"The legislature shall meet at the seat of government in regular session *in each biennium* at the times prescribed by law for not exceeding a total of 120 legislative days. The legislature shall not meet in regular session, nor in any adjournment thereof, after the first Monday following the third Saturday in May of any year. After meeting at a time prescribed by law, the legislature may adjourn to another time. 'Legislative day' shall be defined by law." (Italics supplied.)

Other constitutional provisions involved have remained unchanged. Article 4, § 22, provides in relevant part:

"No bill shall be passed by either house of the legislature upon the day prescribed for the adjournment of the two houses."

Article 4, § 11, provides in relevant part:

"Every bill which shall have passed the Senate and the House of Representatives, in conformity to the rules of each house and the joint rules of the two houses, shall, before it becomes a law, be presented to the governor of the state. If he approves, he shall sign and deposit it in the office of secretary of state for preservation, and notify the house where it originated of the fact. But if not, he shall return it, with his objections, to the house in which it shall have originated; when such objections shall be entered at large on the journal of the same, and the house shall proceed to reconsider the bill. * * * If any bill shall not be returned by the governor within three days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature, by adjournment within that time, prevents its return. Bills may be presented to the governor during the three days following the day of the *final adjournment* of the legislature and the legislature may prescribe the method of performing the acts necessary to present bills to the governor after adjournment. The governor may approve, sign and file in the office of the secretary of state,

within 14 days after the adjournment of the legislature, any act passed during the last three days of the session, and the same shall become a law. If any bill passed during the last three days of the session is not signed and filed within 14 days after the adjournment, it shall not become a law." (Italics supplied.)

*Appeal No. 44733: Senate File 386 (L. 1973, c. 689).*

This action involves a law providing for the payment of certain fees and expenses of witnesses in criminal cases. Nothing more need be said about what is involved in the law. With respect to the manner in which the law was passed, which is what is involved here, the parties have stipulated to the following facts:

"Defendant is the duly qualified and acting Treasurer of Hennepin County, and as such is the officer charged by law with the duty to pay the fees and expenses of state witnesses in criminal cases, as contemplated by Laws 1973, Chapter 689. (A copy of said Act is attached as Exhibit A.)

"On Monday, May 21, 1973, the day on which the Legislature adjourned, both houses of the Minnesota Legislature passed S.F. 386 (Laws 1973, Chapter 689).

"On Thursday, May 24, 1973, S.F. 386 (Laws 1973, Chapter 689) was signed by the Governor and filed with the Secretary of State.

"The Minnesota Legislature adjourned on Monday, May 21, 1973, to reconvene on January 15, 1974, the 120 legislative days allotted for the legislative session not having been exhausted.

"At all times material there were in force the following provisions of the Minnesota Constitution:

The legislature shall meet at the seat of government in regular session in each biennium at the times prescribed by law for not exceeding a total of 120 legislative days. The legislature shall not meet in regular session, nor in any adjournment thereof, after the first Monday following the third Saturday in May of any year. After meeting at a time prescribed by law, the legislature may adjourn to another time.

Minn. Const. Art. IV, § 1.

. . . The governor may approve, sign and file in the office of the secretary of state, within 14 days after the adjournment of the legislature any act passed during the last three days of the session, and the same shall become a law.

Minn. Const. Art. IV, § 11.

. . . No bill shall be passed by either house on the day prescribed for the adjournment of the two houses.

Minn. Const. Art. IV, § 22."

The crucial question involved in this case is whether S.F. 386 was passed "upon the day prescribed for the adjournment of the two houses" within the meaning of art. 4, § 22.

Both parties have noted that the word "prescribed" in art. 4, § 22, has never been given a limited or specific meaning by this court. In State ex rel. Smiley v. Holm, 184 Minn. 228, 235, 238 N. W. 494, 498 (1931), reversed, 285 U. S. 355, 52 S. Ct. 397, 76 L. ed. 795 (1932), the court defined "prescribe" as follows:

"* * * [T]o lay down authoritatively as a guide, direction, or rule of action; * * * to dictate; appoint; direct."

This definition does little to help us in determining what the word "prescribed" in art. 4, § 22, really means. The question really comes down to whether the word "adjournment" as used in art. 4, § 22, refers to a *final* adjournment, or in other words an adjournment sine die, and does not mean an interim adjournment such as we have here.

Respondent contends that the 1972 amendment to art. 4, § 1, established one flexible regular session within each 2-year period or biennium. Appellant on the other hand contends that it was the intent of the amendment to create two regular sessions of the legislature, one each year of the biennium, thereby providing for a final adjournment of each of these sessions within the biennium. In other words, appellant argues that the adjournment after the first part of the session in the odd-numbered years to a date in the even-numbered years is a final adjournment and that no bill can be passed on the day of such adjournment.

The attorney general, under Minn. St. 3.21, is required to explain the effect of a proposed constitutional amendment so that persons not educated in the law may understand what they are voting on. See, Knapp v. O'Brien, 288 Minn. 103, 110, 179 N. W. 2d 88, 92 (1970), where we said in discussing the purpose of this statute:

"* * * It is evident that the Legislature has been mindful of the fact that frequently people who are not educated in law do not understand the legal terminology of a proposed constitutional amendment and, for that reason, has required that the attorney general explain it to them so they understand what they are voting on."

In explaining the effect of the proposed amendment to art. 4, § 1, the attorney general said:

"The amendment changes the way in which the 120 legislative days are counted. First, under the amendment, the legislature can adjourn during the session and the days of adjournment need not be counted. Second, the legislature can meet in regular session in both years of a biennium instead of one year. Third, the term 'legislative day' can be defined by the legislature."

It seems clear that the intent behind the 1972 amendment to art. 4, § 1, was to establish one regular flexible legislative session within each biennium. Prior to the 1972 amendment, art. 4, § 1, provided that the legislature shall meet "in regular session in each odd numbered year * * * for a term not exceeding 120 legislative days." The amendment to art. 4, § 1, provides that the legislature shall meet "in regular session in each biennium * * * for not exceeding a total of 120 legislative days." It must be noted that the phrase "regular session" was continued in the singular form and that the 1972 amendment did not change the provision limiting the number of legislative days in each regular session to 120. The word "biennium" is defined in Webster's Third New International Dictionary (1971) p. 213, as "a period of two years"—a single unit of time.

The language of the 1972 amendment clearly indicates an intent to provide for a single regular session in each 2-year period. If the amendment had been intended to provide for a regular session in each year of the biennium, the legislature in proposing the amendment could easily have said so by providing that the legislature shall meet at the seat of government in regular session in each year of the biennium. The provisions of art. 4, § 1, as amended, are unambiguous on their face. In State ex rel. Gardner v. Holm, 241 Minn. 125, 129, 62 N. W. 2d 52, 55 (1954), we said that the language of a constitutional provision, "when * * * clear, explicit, unambiguous, and free from obscurity," is the best evidence of the underlying intent. In such a situation, courts are "bound to expound the language according to the common sense and ordinary meaning of the words" used.

It might be mentioned that respondent points out that the legislature has been meeting in what may be termed "biennial sessions" ever since 1877. Prior to 1877, the legislature met in yearly sessions. In 1877, art. 4, § 1, was amended to provide that the legislature "shall meet biennially." This provision has continued until the 1972 amendment. The attorney general has construed the 1972 amendment to provide for a flexible single session biennially. Opinion Attorney General, No. 280, May 8, 1973.

It might also be mentioned that in their 1973 joint rules both houses of the legislature have equated the interim adjournment authorized by art. 4, § 1, with a temporary, daily adjournment. Rule 23, Joint Rules of the Senate and House, Journal of the Senate, 1973, p. 1176, provides:

"Adjournment of the regular session in any odd-numbered year to a date certain in the following year shall be equivalent to daily adjournment * * *."

Inasmuch as we hold that the amendment of art. 4, § 1, created one flexible regular session, the question remains whether an adjournment of the portion of the session in the odd-numbered year prevents passage of a bill on that date. Acceptance of the premise of a single biennial session requires acceptance of the

fact that the only final adjournment of the biennial session (assuming that the legislature has not used its 120 days in the odd-numbered year nor finally adjourned on a date set by prior resolution during the first year of the flexible 2-year session) occurs at the adjournment in the even-numbered year. Thus, the summary judgment of the trial court upholding the validity of this act must be affirmed if it is determined that art. 4, § 22, prohibits only the passage of bills upon the day prescribed for final adjournment of the legislature.

Inasmuch as we hold that the amendment created one regular session of the biennium, the final day of the biennial session would either be (a) the 120th legislative day of the biennial session; or (b) the first Monday following the third Saturday in May of the second year; or (c) a date, prior to the 120th day, set by legislative resolution for final adjournment of the biennial session. May 21, 1973, the day on which S.F. 386 was passed, does not fit into any of the above categories and therefore we may not hold that S.F. 386 was passed on the last day of the session for the purposes of art. 4, § 22.

It is true that art. 4, § 1, prohibits the legislature from meeting in regular session after the first Monday following the third Saturday in May of either year of the biennium. It does not follow that May 21, 1973, the day on which S.F. 386 was passed and the day which constituted the first Monday following the third Saturday in May of the first year of the biennium, is a "day prescribed for the adjournment of the two houses" within the meaning of art. 4, § 22. Article 4, § 1, merely prohibits the legislature from meeting in regular session after the first Monday following the third Saturday in May of any year but does not prohibit the passage of bills on such Monday in the first year of the biennium.

While it may not be important here, in the case of Knapp v. O'Brien, 288 Minn. 103, 179 N. W. 2d 88 (1970), we held that a statute passed on the 120th day of the regular session, prior to the 1972 amendment, was invalid. At that time we did not have the flexible session and the question involved here as to whether

a bill may be passed on the day of adjournment in the odd-numbered year of the biennium to a fixed date in the even-numbered year was not involved.

Appellant argues that the obvious rationale behind art. 4, § 22 —to prevent the passage of ill-considered legislation on the last day of the session—applies equally to the last day of the portion of the session held in the odd-numbered year under our flexible session. Granting that the last day of the first-year session was legislatively a busy one, respondent contends that the rationale behind art. 4, § 22, has no application to interim adjournments "since legislation not passed in the odd-numbered year can be considered some six months later at the adjourned session" by the same legislators. We think this position is sound. Any other result would require both houses of the legislature to reorganize at the adjourned session in the even-numbered year and, further-more, would prevent any legislation introduced and acted upon by one house prior to adjournment in the odd-numbered year from being considered at the adjourned session without being reintroduced and going through all the required prerequisites to passage. We do not believe that was what the legislature had in mind when it proposed the amendment or the people believed they were adopting when they voted on this amendment.

It is therefore our conclusion that the amendment to art. 4, § 1, provided a flexible single session in each biennium and that the adjournment in the odd-numbered year to a fixed date in the even-numbered year is not a final adjournment but merely a temporary interim adjournment during the biennial session. Thus construed, passage of S. F. 386 on the day of adjournment in the odd-numbered year did not prevent it from becoming a validly enacted law.

*Appeal No. 44737: Senate File 1726 (L. 1973, c. 782).*

This case involved an act permitting the commissioner of natural resources of the State of Minnesota to convey certain lands in Goodhue County to the defendant by quitclaim deed.

Here again, the facts are not in dispute but have been stipulated as follows:

"Plaintiff is the duly qualified and acting Commissioner of Natural Resources, and as such, is the officer charged by Laws 1973, Chapter 782, with the duty to convey by quit claim deed to the defendant, certain lands in Goodhue County (a true copy of said Act is attached as Exhibit A.)

"On Thursday, May 17, 1973, the Minnesota House of Representatives passed S.F. 1726 (Chapter 782), the Minnesota State Senate having passed S.F. 1726 on April 30, 1973.

"The Legislature met on Friday, May 18, 1973; Saturday, May 19, 1973; did not meet on Sunday, May 20, 1973; and on Monday, May 21, 1973; it adjourned pursuant to concurrent resolution until January 15, 1974.

"On Monday, May 21, 1973, S.F. 1726 was presented to the Governor; and on Tuesday, May 29, 1973, S.F. 1726 was filed with the Secretary of State without the Governor's signature.

"At all times material there was in force the following provision of the Minnesota Constitution:

. . . If any bill shall not be returned by the governor within three days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature, by adjournment within that time, prevents its return. Bills may be presented to the governor during the three days following the day of the final adjournment of the legislature and the legislature may prescribe the method of performing the acts necessary to present bills to the governor after adjournment. The governor may approve, sign and file in the office of the secretary of state, within 14 days after the adjournment of the legislature, any act passed during the last three days of the session, and the same shall become a law. If any bill passed during the last three days of the session is not signed and filed within 14 days after the adjournment, it shall not become a law.

Minn. Const. Art. IV, § 11."

The question involved in this case is whether adjournment of the legislature on May 21, 1973, within 3 days after presentment of S. F. 1726 to the governor, prevented the return of the bill so that S. F. 1726, which the governor did not sign, failed to become law.

An opinion of the attorney general, No. 280, May 8, 1973, construes art. 4, § 11, to provide for a "pocket veto" in two distinct situations: (1) When a bill is passed during the last 3 days of a biennial session and is not signed and filed by the governor within 14 days after final adjournment, and (2) when a bill is passed prior to the last 3 days of a biennial session and is not signed or returned by the governor by the end of the 3-day period after presentment and the legislature has prevented such bill's return by *final* adjournment within 3 days of presentment. We agree with that interpretation of art. 4, § 11.

In State ex rel. Putnam v. Holm, 172 Minn. 162, 168, 215 N. W. 200, 203 (1927), we held that "[a]n adjournment which 'prevents its return' and works a 'pocket veto' of a bill is a final or sine die adjournment of the legislative session." Here again, this case was decided prior to the 1972 amendment of art. 4, § 1. We did note that the "prevailing rule" which we adopted holds that a temporary adjournment of the legislature does not prevent the return of the bill.

While Putnam furnishes support for respondent's position that the pocket veto provisions of art. 4, § 11, apply solely to final adjournments, it must be recognized, as appellant suggests, that the court in Putnam never contemplated a lengthy adjournment of the legislature between years of the biennium and was not attempting to speak to that situation. In arguing that the newly authorized interim adjournment should be equated with adjournment sine die, at least for the purposes of art. 4, § 11, appellant contends that the rationale of The Pocket Veto Case (Okanogan Indians v. United States), 279 U. S. 655, 49 S. Ct. 463, 73 L. ed. 894 (1929), should be followed. In that case, the Supreme Court of the United States held that adjournment of

the first session of the Sixty-Ninth Congress prevented the return of a bill within the meaning of the United States Constitution, art. I, § 7.

While much of the language of the Pocket Veto Case, taken by itself, is in favor of appellant's position, the case can be distinguished on several grounds. Initially it should be noted that the United States Constitution, specifically art. I, § 4, authorizes Congress to "assemble at least once in every year," while the Minnesota Constitution, art. 4, § 1, now authorizes the state legislature to meet in regular session in each biennium.

Furthermore, the distinction between the situation in Congress and the Minnesota situation becomes evident upon closer examination of the rationale of the Supreme Court in the Pocket Veto Case and this court's reasoning in the Putnam case. In ruling that the pocket veto provisions of the United States Constitution apply to the "interim" adjournment of the first session of Congress, the United States Supreme Court found most important the fact that the house to which the bill was to have been returned was not in actual session. Appellant also relies on decisions from other jurisdictions holding that temporary and interim adjournments prevent the return of a bill, since the legislature would not be in session. Among those decisions are In re Public Utility Board, 83 N. J. L. 303, 84 A. 706 (1912); State ex rel. Corbett v. Town of South Norwalk, 77 Conn. 257, 58 A. 759 (1904). See, also, State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 57 So. 942 (1911). Each of these cases was considered and rejected by this court in State ex rel. Putnam v. Holm, *supra.* In the light of our determination that the amendment of art. 4, § 1, was intended to provide a single regular session in each biennium, the rationale behind the Putnam decision compels the determination that the pocket veto provisions of art. 4, § 11, do not apply to interim adjournments. Adjournment short of final adjournment will not prevent the return of legislative bills by the governor. While the legislature in the present case was not actually in session to receive the bill upon possible return, it was,

as Putnam required, in existence at all times relevant. Indeed, despite temporary and interim adjournments the legislature is in existence until the final adjournment of its biennial regular session. As stated in Putnam, the governor, during the temporary and interim adjournment, was free to return the bill, with his objections, to any member or officer of the proper house of the legislature. Thus, the pocket veto provisions of art. 4, § 11, are construed so as to restrict their application to final adjournments.

We then have the question whether S. F. 1726 failed to become law because it was passed during the last 3 days of the 1973 session and was not signed by the governor within 14 days after the adjournment of that session.

In the light of our conclusion that the pocket veto provisions of art. 4, § 11, apply solely to final adjournments, it follows that a bill which is passed during the last 3 days before adjournment in the odd-numbered year to a fixed date in the even-numbered year will not fail to become law if not signed by the governor within 14 days after such adjournment.

Here again, we affirm the summary judgment of the trial court that S. F. 1726 was validly enacted.

*Appeal No. 44738: House File 1772 (L. 1973, c. 783).*

This case involves the right of the state treasurer to transfer funds appropriated by the legislature to the Minnesota Historical Society.

Here also, the facts with respect to the manner in which the bill was passed have been stipulated. They are:

"On Thursday, May 17, 1973, the Minnesota State Senate passed H.F. 1772 (Laws 1973, Chapter 783) which appropriates $1,000 from the general fund to the Minnesota Historical Society. (A copy of said Act is attached as Exhibit A.) The Minnesota House of Representatives passed H.F. 1772 (Laws 1973, Chapter 783) on Wednesday, May 16, 1973.

"On Monday, May 21, 1973, the Legislature adjourned until January 15, 1974.

"On June 5, 1973, H.F. 1772 was presented to the Governor; on June 7, 1973, the Governor signed the bill and filed it with the Secretary of State.

"Plaintiff is the duly qualified and acting Treasurer of the State of Minnesota, and as such, is the officer charged by law with the duty to transfer funds to the Minnesota Historical Society, pursuant to the appropriation purportedly made by Laws 1973, Chapter 783. Defendant, Minnesota Historical Society, is named in Laws 1973, Chapter 783 as the party who would receive the funds.

"At all times material there was in force the following provision of the Minnesota Constitution:

. . . If any bill shall not be returned by the governor within three days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature by adjournment within that time, prevents its return. Bills may be presented to the governor during the three days following the day of final adjournment of the legislature and the legislature may prescribe the method of performing the acts necessary to present bills to the governor after adjournment. The governor may approve, sign and file in the office of the secretary of state, within 14 days after the adjournment of the legislature, any act passed during the last three days of the session, and the same shall become a law. If any bill passed during the last three days of the session is not signed and filed within 14 days after the adjournment, it shall not become a law.

Minn. Const. Art. IV, § 11."

The question involved here is whether May 21, 1973, was the day of final adjournment within the meaning of art. 4, § 11, so that H. F. 1772 failed to become law because it was not presented to the governor during the 3 days following such adjournment.

In view of our construction of art. 4, § 11, in the discussion of Appeal No. 44737, it follows that May 21, 1973, was not the

day of "final adjournment" for the purposes of art. 4, § 11, but was merely a temporary interim adjournment during the unitary biennial legislative session. Therefore, it was not required that the bill be presented to the governor within 3 days of the adjournment.

The question still remains whether the bill, even though not required to be presented to the governor within 3 days following the adjournment, must be signed and filed by the governor within 14 days after such adjournment.

Here again, the dispute centers mainly around the controversy over whether the word "adjournment" does or does not mean final adjournment as distinguished from an interim adjournment after the first portion of the session in the odd-numbered year. We think we have sufficiently answered this question in the discussion above. Thus, the word "adjournment" contained in the above-quoted portion of art. 4, § 11, is construed to mean only final or sine die adjournment, and the phrase "last three days of the session" is construed to refer solely to the last 3 days of the biennial session or prior to any final adjournment which might occur by the legislature's using its full 120 days or by its passing a joint resolution for a final adjournment. Thus, all that was required for this bill to become law was the governor's signature within 3 days after presentment. It was presented to him on June 5 and signed by him on June 7. Hence the bill became law with the governor's timely signature.

It follows that here too the trial court correctly held that H. F. 1772 was validly enacted into law.

In the light of our conclusions as to the effect of the amendment to art. 4, § 1, we affirm the decision of the trial court in each of the above cases.

Affirmed.