Robert **CARNEY**, Jr., on behalf of himself and all others similarly situated, Appellant,

v.

**STATE of Minnesota, et al., Respondents.**

No. A10–432.

Court of Appeals of Minnesota.

Dec. 28, 2010.

Robert Carney Jr., Minneapolis, MN, pro se appellant.

Lori Swanson, Attorney General, John S. Garry, Assistant Attorney General, St. Paul, MN, for respondents.

Considered and decided by LANSING, Presiding Judge; KALITOWSKI, Judge; and MINGE, Judge.

## OPINION

LANSING, Judge.

This appeal is from a district court judgment dismissing Robert Carney, Jr.'s challenge to an executive-branch unallotment that eliminated funding for the political-contribution refund program. Because the Minnesota Legislature lawfully voided and superseded the challenged unallotment in its 2010 First Special Session, we dismiss Carney's appeal as moot.

## FACTS

The political-contribution refund (PCR) program, governed by Minn.Stat. § 290.06, subd. 23 (2010), allows taxpayers to claim a refund for contributions, up to $50 for individuals and $100 for married couples, made to political parties or to candidates agreeing to limit campaign expenditures in accordance with Minn.Stat. § 10A.322 (2010). On July 1, 2009, Governor Tim Pawlenty approved budgetary unallotments that, among other reductions, eliminated funding for the PCR program for refunds of political contributions made between July 1, 2009, and June 30, 2011. These budgetary unallotments are more generally described in the supreme court's decision in *Brayton v. Pawlenty*, 781 N.W.2d 357, 359–61 (Minn.2010).

On July 22, 2009, with knowledge of the elimination of funds for the PCR program, Carney made a $50 contribution to the Fifth Congressional District Green Party of Minnesota. Carney then submitted an application for a refund. Although the application form dictated use "to claim a refund of contributions made between January 1 through June 30, 2009," Carney included a handwritten notation: "Note, per MN law, I am filing for a contribution made *after* 6/30/09." By letter dated August 26, 2009, the Minnesota Department of Revenue notified Carney that it could not process his application "because no funding [was] presently available to pay refunds for contributions made between July 1, 2009, and June 30, 2011."

On July 23, 2009, Carney initiated this putative class action in district court against the State of Minnesota and Minnesota Commissioner of Revenue Ward Eiñess (the state). The single count of Carney's complaint asserted violations of Minn.Stat. §§ 16A.152 (2010) (the unallotment statute), 290.06 (the PCR statute), and 270C.435 (2010), which provides that tax refunds or other payments to taxpayers are not assignable or subject to legal process except as specifically provided by

law. The theory of liability alleged by Carney's complaint was that the authority to unallot provided by Minn.Stat. § 16A.152, subd. 4(b), does not extend to the PCR program and that eliminating funding for the PCR program constituted unlawful legal process against a tax refund under Minn.Stat. § 270C.435.

Several months into the litigation, Carney amended his complaint to assert a motion for a temporary injunction and the state moved to dismiss the complaint or, in the alternative, for summary judgment. In his memorandum in opposition to the state's motion to dismiss or for summary judgment, Carney set forth a new theory of liability, that "the unallotment power of Minn.Stat. § 16A.152, subd. 4(b), must be based on events that occur after the start of the biennium; then and only then do [respondents] have the power of unallotment." This theory has some commonality with the basis on which the Minnesota Supreme Court ultimately held, in *Brayton*, that the unallotments were unlawful. *See Brayton*, 781 N.W.2d at 368 (holding that, "[b]ecause the legislative and executive branches never enacted a balanced budget for the 2010–11 biennium, use of the unallotment power to address the unresolved deficit exceeded the authority granted to the executive branch by the [unallotment] statute"). Carney did not, however, move to amend his complaint to allege the basis on which *Brayton* was decided.

The district court issued a written order denying Carney's motion for a temporary injunction. In the same order, it granted the state's motion to dismiss. Distinguishing its previous determination on constitutional principles, the district court explained that "[t]his lawsuit unlike the [earlier district court] *Brayton* case involves only the issue of whether the [PCR] program is subject to unallotment by the [g]overnor." Concluding that the statutory arguments advanced by Carney did not preclude the governor's statutory unallotment authority from extending to the PCR program, the district court granted the state's motion to dismiss. The district court declined to address Carney's newly asserted unallotment theory, reasoning "that it would not be fair to deny [the state's] motion to dismiss based on claims that were not asserted in [Carney's] [c]omplaint and not argued in [his] initial ... memorandum."

After Carney filed his appeal, the Minnesota Supreme Court released its decision in *Brayton*, holding that the executive branch exceeded its statutory authority by making the unallotments before a balanced budget had been passed. *Id.* As the 2009–10 legislative session was drawing to a close, the legislature and the governor reached agreement on a bill to balance the budget. Following the close of the general legislative session on May 17, 2010, the governor called an immediate special session, at which the legislature passed the bill, House File 1, and adjourned the special session on the same day. The governor signed the bill into law on May 21, 2010. 2010 Minn. Laws 1st Spec. Sess. ch. 1, art. 13, § 4, at 2056. House File 1 voided the executive-branch allotment reductions made by the commissioner of management and budget but suspended funding for the PCR program to the same extent as did the executive unallotments.

On appeal, Carney argues that because the legislature enacted House File 1 on the day prescribed for adjournment, the enactment is invalid and his lawsuit should be allowed to proceed. Secondarily, he argues that his action was improperly dismissed because it is based on the same theory that prevailed in *Brayton*.

## ISSUES

Does the passage of House File 1, enacted by the legislature at a special session held on the day prescribed for adjournment of the 2009–10 legislative session, make this appeal moot?

## ANALYSIS

██ It is a well-established rule in Minnesota that reviewing courts will dismiss a case as moot when effective relief cannot be granted. *Kahn v. Griffin*, 701 N.W.2d 815, 821 (Minn.2005). The mootness doctrine applies to a case, pending appeal, if "an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible." *In re Application of Minnegasco*, 565 N.W.2d 706, 710 (Minn.1997). Carney concedes that, if House File 1 was lawfully passed, his claims are moot. But he argues that the passage of House File 1 was constitutionally infirm and, thus, that his lawsuit remains viable.

██ "Issues of constitutional interpretation are questions of law and are reviewed by this court de novo." *State v. Brooks*, 604 N.W.2d 345, 348 (Minn.2000). "When constitutional language is unambiguous, the language is effective as written and no further rules of construction should be applied." *Id.* "If the language is ambiguous, the court must look beyond the words for other indicia of intent." *Id.*

██ Carney's challenge to the constitutional validity of House File 1 rests on Article IV, section 21, of the Minnesota Constitution, which provides:

PASSAGE OF BILLS ON LAST DAY OF SESSION PROHIBITED. *No bill shall be passed by either house upon the day prescribed for adjournment.* This section shall not preclude the enrollment of a bill or its transmittal from one house to the other or to the executive for his signature.

(Emphasis added.) Section 12 of the same article governs the timing of legislative sessions:

The legislature shall meet at the seat of government in regular session in each biennium at the times prescribed by law for not exceeding a total of 120 legislative days. The legislature shall not meet in regular session, nor in any adjournment thereof, after the first Monday following the third Saturday in May of any year. After meeting at a time prescribed by law, the legislature may adjourn to another time. "Legislative day" shall be defined by law. A special session of the legislature may be called by the governor on extraordinary occasions.

Minn. Const. art. IV, § 12.

Reading these provisions together, the supreme court has explained that "the day prescribed for adjournment" refers only to the final adjournment of a biennial legislative session, which is either "(a) the 120th legislative day of the biennial session; or (b) the first Monday following the third Saturday in May of the second year; or (c) a date, prior to the 120th day, set by legislative resolution for final adjournment of the biennial session." *State v. Hoppe*, 298 Minn. 386, 394, 215 N.W.2d 797, 802 (1974) (holding legislation validly passed on Monday following the third Saturday in May of the first year of biennial session). May 17, 2010, was the day designated for adjournment of the 2009–10 legislative session because it was the Monday following the third Saturday in May in the second year of the biennial session.

The state and Carney agree that the Minnesota Constitution prohibited the legislature from passing legislation on May 17, 2010, as part of the regular session. They dispute whether the prohibition also

extends to the passage of legislation on that day during a special session called by the governor pursuant to Minn. Const. art. IV, § 12 (providing that "[a] special session of the legislature may be called by the governor on extraordinary occasions"). We conclude that it did not.

Article IV, section 12, dictates certain days for adjournment only with respect to regular legislative sessions. Article IV, section 21's prohibition of passage of bills on the day designated for adjournment is most sensibly read to refer to regular legislative sessions as well. To the extent that section 21 is ambiguous, its purposes support a construction that applies only to adjournment of the regular legislative session. The purpose of section 21—"to prevent the passage of ill-considered legislation on the last day of the session"—does not apply to a special session because the constitution does not limit the duration or timing of a special session. *Cf. Hoppe*, 298 Minn. at 395, 215 N.W.2d at 802 (holding that rationale does not apply to passage of bills on last day of session held in first year because same legislators can take further action during balance of session). Nothing in our constitution prohibits the legislature adjourning its regular session, convening a special session called by the governor, passing a bill, and adjourning the special session all within the same day.

Carney acknowledges that the legislature could have passed the legislation on May 16, 2010, as part of the regular session, or May 18, 2010, in special session, or "more generally on *any other day of the year*." Although there is a rational basis for prohibiting bill passage on the final day of a regular legislative session, there is no reasoned basis to prohibit a one-day special session that follows, on the same day, the legislature's adjournment of its biennial session.

Finally, we note that Carney's reliance on *Knapp v. O'Brien* is misplaced. In that case, the supreme court held invalid a bill that it determined had been passed after expiration of the 120th day of a regular session. 288 Minn. 103, 105–06, 114, 179 N.W.2d 88, 90, 95 (1970). *O'Brien* did not involve a special session. *See id.* at 114, 179 N.W.2d at 95 (noting that "the governor *could have* called a special session following the adjournment of the [l]egislature during which the bill now under consideration could validly have been passed" (emphasis added)).

■■■ Our conclusion that House File 1 is a constitutional enactment results in a determination that Carney's appeal is moot. "A controversy that has been resolved by the legislature in the exercise of its constitutional powers is nonjusticiable because it fails to present a redressable injury that is capable of resolution through the judicial process." *State ex rel. Sviggum v. Hanson*, 732 N.W.2d 312, 315 (Minn.App.2007). Because we conclude that Carney's appeal is moot, we need not reach the arguments that he raises in this appeal. Even in the absence of mootness, however, we would not reverse the district court's dismissal of Carney's complaint. Carney's appeal is based solely on his version of the *Brayton* unallotment theory. Because Carney did not plead this theory, either initially or by amendment, the district court did not err by declining to allow it. *See State ex rel. Hatch v. Allina Health Sys.*, 679 N.W.2d 400, 406 (Minn. App.2004) (holding that party is bound by pleadings that he does not amend). Accordingly, were we to reach the merits of Carney's appeal, we would affirm dismissal of his complaint.

**DECISION**

This appeal is dismissed because Carney's challenge to the executive-branch un-

allotments that suspended funding for the PCR program became moot upon the lawful passage of legislation effecting the same result.

**Appeal dismissed.**